THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| R. WAYNE KLEIN, as Receiver,<br><br>        Plaintiff,<br><br>v.<br><br>PLASKOLITE, LLC,<br><br>        Defendant. | **MEMORANDUM DECISION AND ORDER DENYING [39] DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:19-cv-00832-DN-PK<br>District Judge David Nuffer<br>Magistrate Judge Paul Kohler |

## I.    INTRODUCTION

This action is one of many ancillary actions filed by a receiver of assets owned by entities

involved in tax fraud. The underlying tax fraud case, *United States v. RaPower-3, LLC, et al.*

("Civil Enforcement Case" or "CEC"),[1] went to trial in 2018. Defendants in the CEC ("CEC

Defendants") included RaPower-3, LLC; International Automated Systems, Inc. (IAS); LTB1,

LLC; Neldon Johnson ("Johnson") (the sole decision-maker for the preceding entities); and R.

Gregory Shepard (who assisted Johnson in marketing and sales for the entities).

A 12-day bench trial was held in the CEC from April 2 through June 22, 2018. The result

was an Initial Order and Injunction After Trial;[2] an order freezing assets;[3] an extensive set of

---

[1] No. 2:15-cv-00828-DN-DAO (D. Utah) ("Civil Enforcement Case" or "CEC").

[2] Docket no. 413, 2:15-cv-828, filed June 22, 2018.

[3] Memorandum Decision and Order Freezing Assets and to Appoint a Receiver ("Freeze Order"), docket no. 444, 2:15-cv-828, filed August 22, 2018 attached to [Receiver's] Opposition to Motion for Summary Judgment of Defendant Plaskolite, LLC ("Receiver's Opposition") as Exhibit K, docket no. 52-5, December 10, 2021.

findings and conclusions ("CEC Main Findings");[4] a judgment;[5] appointment of a receiver for

the CEC Defendants;[6] an order including another 13 Affiliated Entities in the receivership as

Receivership Entities;[7] an order finding principals Johnson, Glenda Johnson, LaGrand Johnson,

and Randale Johnson in contempt and imposing sanctions;[8] an order effecting involuntary

turnover of certain properties and records to the Receiver;[9] and over 80 ancillary actions seeking

recovery of receivership assets. All these orders in the CEC ("CEC Orders") contain additional

litigated findings, which together with the CEC Main Findings constitute the CEC Findings.

The primary purposes of the receivership are to safeguard receivership assets

("Receivership Property"), administer Receivership Property, and achieve a final and equitable

distribution of Receivership Property. The Receiver's work seeks to undo the effects of the fraud

perpetrated by the Receivership Entities and their principals and to restore property to those who

were defrauded, including customers (who paid nearly 33 million dollars) and the government.

---

[4] Findings of Fact and Conclusions of Law, docket no 467, 2:15-cv-828, filed October 4. 2018, attached to Motion for Summary Judgment of Plaskolite, Inc. ("Plaskolite's Motion" or "Plaskolite's Motion for Summary Judgment") at Exhibit G, docket no. 39-8, filed October 29, 2021.

[5] Judgment in a Civil Case, docket no 468, 2:15-cv-828, filed October 4. 2018; Amended and Restated Judgment in a Civil Case, docket no. 507, 2:15-cv-828, filed November 13, 2018.

[6] Corrected Receivership Order, docket no. 491, 2:15-cv-828, filed November 1, 2018, attached to Receiver's Opposition at Exhibit O, docket no. 52-14, filed December 10, 2021.

[7] Memorandum Decision and Order on Receiver's Motion to Include Affiliates and Subsidiaries in Receivership ("Affiliates Order"), docket no. 636, 2:15-cv-828, filed May 3, 2019, attached to Receiver's Opposition as Exhibit J, docket no. 52-4, filed December 10, 2021. The Affiliated Entities include Solco I, LLC; XSun Energy, LLC; Cobblestone Centre, LLC ("Cobblestone"); LTB O&M, LLC; U-Check, Inc.; DCL16BLT, Inc.; DCL-16A, Inc; N.P. Johnson Family Limited Partnership ("NPJFLP"); Solstice Enterprises, Inc.; Black Night Enterprises, Inc.; and Starlight Holdings, Inc.; Shepard Energy; and Shepard Global, Inc.

[8] Civil Contempt Order Re: Neldon Johnson, Glenda Johnson, LaGrand Johnson, and Randale Johnson ("Contempt Order"), docket no. 947, 2:15-cv-828, filed July 6, 2020, attached to Receiver's Opposition as Exhibit R, docket no. 52-17, filed December 10, 2021.

[9] Memorandum Decision and Order Granting Turnover Motion; Denying Motion to Strike; Overruling Objection to Authentication of Exhibits; and Overruling Objection to Rejection of Reputed Contract ("Turnover Order"), docket No. 1007, 2:15-cv-828 filed September 15, 2020, attached to Receiver's Opposition as Exhibit Q, docket no. 52-16.

A major victim of the fraud was the United States Treasury. The CEC "Defendants' conduct wrongfully deprived the U.S. Treasury of the taxes [the CEC] Defendants' customers lawfully owed."[10] "A reasonable approximation of the harm to the [U.S.] Treasury, from depreciation and tax credits claimed from a sample [of tax returns for 5 of the ten years of operation] is at least $14,207,517.499."[11]

This case is different from most ancillary proceedings arising from the CEC which generally sought to recover funds from insiders or commissions from sellers of unregistered securities. As Defendant Plaskolite, LLC ("Plaskolite") has noted, "[t]here are no allegations that [it] profited from the receivership entities' fraud with commissions or was involved in perpetuating any fraudulent tax scheme involving solar panels."[12] Rather, Plaskolite was a vendor that sold goods to two Receivership Entities, which were central to the tax fraud.[13] In this case, the Receiver seeks to recover payments made to Plaskolite by Affiliated Entity Cobblestone Centre, LLC ("Cobblestone"). Plaskolite sold goods to Cobblestone while the CEC trial was ongoing.[14] Plaskolite received at least $512,594.38 in May 2018.[15] The Receiver alleges the payment to Plaskolite is a voidable transfer or, in the alternative, subject to a claim for unjust enrichment.[16]

Plaskolite filed its Motion for Summary Judgment on October 29, 2021, seeking dismissal of the Receiver's first claim for Unlawful Transfer and the Receiver's fourth claim for

---

[10] CEC Main Findings, ¶ 427 at 84.

[11] *Id*. ¶ 422 at 84.

[12] Plaskolite's Motion at 1.

[13] *Infra*, Undisputed Material Facts, ¶¶ 26-49.

[14] *Id*. ¶¶ 45-49; Amended Complaint ¶ 1, docket no. 16, filed April 29, 2020.

[15] Plaskolite's Motion at 5, ¶ 11 (stating $515,362.64 was paid) (not disputed in Receiver's Opposition); Receiver's Opposition at 15 ¶ 46 (stating $512,594.38 was paid).

[16] Amended Complaint, ¶¶ 26-53.

Unjust Enrichment.[17] The Receiver filed its Opposition on December 10, 2021,[18] and Plaskolite filed its Reply on January 14, 2022.[19]

For the reasons set forth below, Plaskolite's Motion for Summary Judgment[20] is DENIED.

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................1
II.     BACKGROUND .................................................................................................5
III.    UNDISPUTED MATERIAL FACTS .................................................................6
        Fraudulent Scheme ................................................................................. 7
        The Civil Enforcement Case against the CEC Defendants ..................... 9
        Plaskolite's Transactions with Receivership Entities ........................... 13
        Positions and Evidence in this litigation .............................................. 18
        Plaskolite and Cobblestone in the Civil Enforcement Case.................. 20
        Evidence about Cobblestone .................................................................. 21
IV.     STANDARD OF REVIEW ...............................................................................22
V.      DISCUSSION ...................................................................................................23
        A.      The Civil Enforcement Case Findings May Be Used in this Case ...................... 23
                1.      Judicial Notice May Be Taken of Findings in the Civil Enforcement Case ............................................................................24
                2.      The Dangers of Use of Judicial Opinions from Other Cases Are Not Present Here ....................................................................25
                3.      Receivership and UVTA Proceedings Have Equitable Natures ...........27
                4.      Issue Preclusion, Collateral Estoppel, and Res Judicata Are Inapplicable 28
                5.      Plaskolite Is Not Denied Due Process ....................................................28
                6.      There Is No Disconnect Between the Civil Enforcement Case and This Case ...............................................................................................31
                7.      Plaskolite's Hearsay, Personal Knowledge, "Commentary," and Authentication Objections are Overruled ...............................................32
                8.      Facts Found in the Civil Enforcement Case Do Not Defeat the Receiver's Claim ..................................................................................37
        B.      First Claim: Receiver's UVTA Claim .................................................... 39
                1.      Cobblestone, the government, and the purchasers of plastic lenses qualify as creditors under the Voidable Transfer Statute .....................................40

---

[17] Plaskolite's Motion for Summary Judgment ("Plaskolite's Motion") at 1-29, docket no. 39, filed October 29, 2021.

[18] Receiver's Opposition, docket no. 52, filed October 29, 2021.

[19] [Plaskolite's] Reply in Support of Motion for Summary Judgment of Plaskolite, LLC ("Plaskolite's Reply"), docket no. 62, filed January 14, 2022.

[20] Docket no. 39, filed October 29, 2021.

|   | 2. | Disputed material facts remain on the Receiver's Claim under Utah Code § 25-6-202(1)(a) | 42 |
| C. | Fourth Claim: The Receiver's Unjust Enrichment Claim Survives | | 46 |
|   | 1. | The Receiver may pursue an equitable unjust enrichment claim in the alternative to his voidable transfer claim | 46 |
|   | 2. | A reasonable factfinder could conclude the transfer of funds from Cobblestone to Plaskolite was inequitable, and that Plaskolite's retention of the funds is unjust | 50 |
| VI. | ORDER | | 53 |
| A. | Order on Motion for Summary Judgment | | 53 |
| B. | Order Establishing Facts | | 53 |

## II.    BACKGROUND

Defendant Plaskolite seeks summary judgment on the Receiver's voidable transfer claims[21] arguing that the Receiver cannot prove that:

(1) Cobblestone, the Receivership Entity which purchased goods from Plaskolite, had (at the time of the transfers or later) any creditor that was adversely impacted by payments to Plaskolite;

(2) Cobblestone intended to defraud creditors by transacting with Plaskolite; and

(3) any of the 11 factors set forth in Utah Code Section 25-6-202(2) support a finding of "actual intent to hinder, delay, or defraud any creditor."[22]

Regarding the Receiver's unjust enrichment claim, Plaskolite also argues that it fails because the availability of legal remedies under the Utah Voidable Transfer Act ("UVTA") bars the equitable remedy of unjust enrichment.[23]

---

[21] Plaskolite's Motion also sought dismissal of two other voidable transfer claims. Plaskolite's Motion at 23-24. However, those claims were dismissed by stipulation shortly after the Receiver's Opposition was filed. Stipulated Dismissal of the Second and Third Causes of Action with Prejudice, docket no. 53, filed December 15, 2021; Docket Text Order, docket no. 54, filed December 15, 2021. The dismissed claims depended on whether reasonably equivalent value was provided for the Plaskolite and Cobblestone transaction. These issues were briefed in Plaskolite's Motion but mooted by the stipulated dismissal. Reasonably equivalent value is not an element for the Receiver's remaining voidable transfer and unjust enrichment claims.

[22] Plaskolite's Motion at 13-29.

[23] *Id.* at 24-29.

This Memorandum Decision and Order determines that Plaskolite's Motion for Summary Judgment must be denied. It also determines undisputed facts that are established for future purposes in this case.

### III.    UNDISPUTED MATERIAL FACTS[24]

1.    Plaintiff R. Wayne Klein is the Receiver for several entities that were involved in a fraudulent tax scheme (the "Receivership Entities").[25] The Receivership Entities were put under the Receiver's control after the CEC Corrected Receivership Order was entered.[26]

2.    Some of the Receivership Entities were the CEC Defendants while others were Affiliated Entities that were later put under the control of the Receiver. Cobblestone is an Affiliated Entity and a Receivership Entity.[27]

3.    The Affiliated Entities which Johnson created, controlled, and owned were used by the CEC Defendants "to [perpetuate] a fraud to enable funding for Neldon Johnson."[28]

4.    "Johnson . . . commingled funds between these entities, used their accounts to pay personal expenses, and transferred Receivership Property to and through them in an attempt to avoid creditors."[29] Each of the Affiliated Entities is a subsidiary or affiliated entity of the CEC Defendants and has close associations with the Receivership Entities. In many cases, the

---

[24] The following Undisputed Material Facts are taken from the parties' briefs and attached exhibits and the Orders that the District of Utah entered for the fraudulent scheme involving the Receivership Entities. Those facts, or portions thereof, identified in the parties' briefing that do not appear in these Undisputed Material Facts are either disputed; not supported by cited evidence; not material; or are not facts, but rather, are characterization of facts or legal argument. Additionally, some of these Undisputed Material Facts may not be material to the disposition of Plaskolite's Motion, but are nevertheless included to give background and context to the issues raised.

[25] Receiver's Opposition at 11, ¶ 24; Plaskolite's Reply at 4. Plaskolite objected to this fact. Plaskolite's Reply at 4. However, as discussed in Section V.A.1. of this Memorandum Decision and Order, Plaskolite's objection is overruled because judicial notice is taken of facts from the CEC under Federal Rule of Evidence 201.

[26] Corrected Receivership Order.

[27] *Id*.; Affiliates Order.

[28] Affiliates Order at 4, ¶ 2.

[29] *Id*. at 4-5, ¶ 2.

Affiliated Entities and CEC Defendants have common officers, directors, members, and managers. Their corporate purposes are similar. And there have been numerous and substantial financial transactions between them.[30]

5.      "[T]he [CEC] Defendants and Affiliated Entities have engaged in transactions without objective economic justification or compliance with legal formalities, while concealing assets and withholding records from the Receiver."[31]

**Fraudulent Scheme**

6.      Johnson claimed to have invented solar energy technology, which involved solar lenses placed in arrays on towers.[32]

7.      To make money from this purported technology, Johnson sold a component of the technology: the solar lenses.[33]

8.      One of the CEC Defendants and Receivership Entities, RaPower, sold the lenses to hundreds of investors through a multi-level marketing model.[34]

---

[30] *Id*. at 5, ¶ 3.

[31] *Id*. at 5, ¶ 4.

[32] Receiver's Opposition at 6, ¶ 1 (citing CEC Main Findings at 2, ¶ 2-3). Plaskolite objected to this fact on hearsay grounds. Plaskolite's Reply at 3, 5. However, as specified in Section V.A.1 of this Memorandum Decision and Order, Plaskolite's objection is overruled because judicial notice is taken of facts from the CEC under Federal Rule of Evidence 201.

[33] Receiver's Opposition at 6, ¶ 2 (citing CEC Main Findings at 6, ¶ 27). Plaskolite objected to this fact on hearsay grounds. Plaskolite's Reply at 3, 5. However, as specified in Section V.A.1 of this Memorandum Decision and Order, Plaskolite's objection is overruled because judicial notice is taken of facts from the CEC under Federal Rule of Evidence 201.

[34] Receiver Opposition's at 6, ¶ 3 (citing CEC Main Findings at 8-9, ¶¶ 44-45). Plaskolite objected to this fact on hearsay grounds. Plaskolite's Reply at 3, 5. However, as specified in Section V.A.1 of this Memorandum Decision and Order, Plaskolite's objection is overruled because judicial notice is taken of facts from the CEC under Federal Rule of Evidence 201.

9.      Johnson's entities retained the lenses and controlled what happened to them (if anything).[35]

10.     The Receivership Entities emphasized how little any customer would have to do with respect to "leasing out" their lenses: "[s]ince LTB[1] installs, operates and maintains your lenses for you, having your own solar business couldn't be simpler or easier."[36]

11.     The Receivership Entities knew that they sold solar lenses to individuals who generally work full-time jobs, like teachers, school administrators, coaches, and others. They knew, or had reason to know, that their customers do not have special expertise in the solar energy industry.[37]

---

[35] Receiver's Opposition at 7, ¶ 11 (citing CEC Main Findings at 57, ¶ 292). Plaskolite objected to this fact on hearsay grounds. Plaskolite's Reply at 3, 5. However, as specified in Section V.A.1 of this Memorandum Decision and Order, Plaskolite's objection is overruled because judicial notice is taken of facts from the CEC under Federal Rule of Evidence 201.

[36] Receiver's Opposition at 8, ¶ 12 (citing CEC Main Findings at 64). Plaskolite objected to this fact on hearsay grounds. Plaskolite's Reply at 3, 5. However, as specified in Section V.A.1 of Memorandum Decision and Order, Plaskolite's objection is overruled because judicial notice is taken of facts from the CEC under Federal Rule of Evidence 201.

[37] Receiver's Opposition at 8, ¶ 13 (citing CEC Main Findings at 67, ¶ 350). Plaskolite objected to this fact on hearsay grounds. Plaskolite's Reply at 3, 5. However, as specified in Section V.A.1 of this Memorandum Decision and Order, Plaskolite's objection is overruled because judicial notice is taken of facts from the CEC under Federal Rule of Evidence 201.

12.     The Receivership Entities advertised substantial returns and tax benefits in exchange for only a down payment on the solar lenses:[38]



**Enforcement Case against the CEC Defendants**

13.     On November 23, 2015, the United States Department of Justice filed the Civil Enforcement Case against the CEC Defendants alleging that they were operating a fraudulent solar energy scheme.[39]

14.     The court in the CEC found: "For more than ten years, the [CEC Defendants] promoted an abusive tax scheme centered on purported solar energy technology featuring 'solar

---

[38] Receiver's Opposition at 8-9, ¶ 14 (citing Receiver's Exhibit H, Charts of Entities at 1, docket no. 52-2, filed December 10, 2021). Plaskolite objected to the cited Chart of Entities as being unauthenticated. Plaskolite's Reply at 3. Plaskolite's objection is overruled because the same Chart of Entities was used in the CEC Main Findings. CEC Main Findings at 37. Judicial notice is taken under Federal Rule of Evidence 201.

[39] Receiver's Opposition at 10, ¶ 16; Complaint ("CEC Complaint"), docket no. 2 in CEC, filed November 23, 2015. Plaskolite objected to this fact on hearsay grounds. Plaskolite's Reply at 3, 5. However, as discussed in Section V.A.1 of this Memorandum Decision and Order, Plaskolite's objection is overruled because judicial notice is taken of the facts from the CEC under Federal Rule of Evidence 201. Additionally, the Receiver did not assert any facts from the CEC Complaint, but rather that the Complaint was filed in the CEC on a certain day against certain entities.

lenses' to customers across the United States. But the solar lenses were only the cover story for what the [CEC Defendants] were really selling: unlawful tax deductions and credits."[40]

15.     The CEC Defendants sold solar lenses emphasizing their purported tax benefits. Customers were told that they could "zero out" their federal income tax liability by buying enough solar lenses and claiming both a depreciation deduction and solar energy tax credit for the lenses.[41]

16.     The purported solar energy technology and solar lenses, however, did not work and could not generate marketable energy. Specifically, the court in the CEC found that the "purported solar energy technology is not now, has never been, and never will be a commercial-grade solar energy system that converts sunlight into electrical power or other useful energy" and "[t]he solar lenses do not, either on their own or in conjunction with other components, use solar energy to generate [marketable electricity]."[42]

17.     None of these solar lenses ever met the necessary elements to qualify for depreciation deductions or the solar energy tax credit. Indeed, "[h]undreds, if not thousands" of customer lenses were not even removed from the shipping pallets.[43]

---

[40] Receiver's Opposition at 10, ¶ 17 (citing Affiliates Order at 4, ¶ 1). Plaskolite objected to this fact on hearsay grounds. Plaskolite's Reply at 4-5. However, as specified in Section V.A.1 of this Memorandum Decision and Order, Plaskolite's objection is overruled because judicial notice is taken of facts from the CEC under Federal Rule of Evidence 201.

[41] Receiver's Opposition at 10, ¶ 18 (citing CEC Main Findings at 35, ¶ 203). Plaskolite objected to this fact on hearsay grounds. Plaskolite's Reply at 4-5. However, as specified in Section V.A.1 of this Memorandum Decision and Order, Plaskolite's objection is overruled because judicial notice is taken of facts from the CEC under Federal Rule of Evidence 201.

[42] Receiver's Opposition at 10, ¶ 19 (citing CEC Main Findings at 49, ¶ 263). Plaskolite objected to this fact on hearsay grounds. Plaskolite's Reply at 4-5. However, as specified in Section V.A.1 of this Memorandum Decision and Order, Plaskolite's objection is overruled because judicial notice is taken of facts from the CEC under Federal Rule of Evidence 201.

[43] Receiver's Opposition at 11 ¶ 20 (citing CEC Main Findings at 55-56, ¶ 288). Plaskolite objected to this fact on hearsay grounds. Plaskolite's Reply at 4-5. However, as specified in Section V.A.1 of this Memorandum Decision and Order, Plaskolite's objection is overruled because judicial notice is taken of facts from the CEC under Federal Rule of Evidence 201.

18.     The evidence adduced at the CEC trial showed that the CEC Defendants organized the solar energy scheme; that the CEC Defendants made false or fraudulent statements about the tax benefits to be obtained from purchasing a solar lens; and that the CEC Defendants knew or had reason to know that their statements were false or fraudulent pertaining to a material matter, namely the tax benefits of depreciation and solar energy tax credits.[44]

19.     Notwithstanding the fact the solar lenses and technology never worked, the Receivership Entities continued to sell solar lenses to customers emphasizing that customers would qualify for depreciation deductions and the solar energy tax credit. Between 45,205 and 49,415 solar lenses were sold to customers.[45]

20.     The Receivership Entities' own transaction documents and testimony at trial in the Civil Enforcement Case showed that the gross receipts received by the Receivership Entities were at least $32,796,196 and possibly much more.[46]

21.     The court in the CEC enjoined the Receivership Entities from promoting their abusive solar energy scheme; ordered them to disgorge their gross receipts; and required them to turn over their assets and business operations to the Receiver.[47]

---

[44] Receiver's Opposition at 11 ¶ 21 (citing Freeze Order at 15-16). Plaskolite objected to this fact on hearsay grounds. Plaskolite's Reply at 4-5. However, as specified in Section V.A.1 of this Memorandum Decision and Order, Plaskolite's objection is overruled because judicial notice is taken of facts from the CEC under Federal Rule of Evidence 201.

[45] Receiver's Opposition at 11 ¶ 22 (citing CEC Main Findings at 14, ¶ 79). Plaskolite objected to this fact on hearsay grounds. Plaskolite's Reply at 4-5. However, as specified in Section V.A.1 of this Memorandum Decision and Order, Plaskolite's objection is overruled because judicial notice is taken of facts from the CEC under Federal Rule of Evidence 201.

[46] Receiver's Opposition at 11, ¶ 23 (citing CEC Main Findings at 15, ¶¶ 81-86). Plaskolite objected to this fact on hearsay grounds. Plaskolite's Reply at 4-5. However, as specified in Section V.A.1 of this Memorandum Decision and Order, Plaskolite's objection is overruled because judicial notice is taken of facts from the CEC under Federal Rule of Evidence 201.

[47] Receiver's Opposition at 11 ¶ 24 (citing Affiliates Order at 4, ¶ 1). Plaskolite objected to this fact on hearsay grounds. Plaskolite's Reply at 4-5. However, as specified in Section V.A.1 of this Memorandum Decision and Order, Plaskolite's objection is overruled because judicial notice is taken of facts from the CEC under Federal Rule of Evidence 201.

22.     The court in the CEC found that the "whole purpose of RaPower, IAS, and LBT1 . . . was to perpetuate a fraud to enable funding for Neldon Johnson. The same is true for other entities Johnson created, control[ed], and own[ed] . . . . Johnson has commingled funds between these entities, used their accounts to pay personal expenses, and transferred Receivership Property to and through them in an attempt to avoid creditors."[48]

23.     "[T]he whole purpose of RaPower[] was to perpetrate a fraud to enable funding of the unsubstantiated, irrational dream of Nel[d]on Johnson. The same is true for the other entities Johnson established and used including IAS, SOLCO I, XSun Energy, Cobblestone, and the LTB entities."[49]

24.     "[The Receivership Entities] have no legitimate business, [the Receivership Entities'] solar energy scheme is an abusive tax scheme and not a legitimate business."[50]

25.     "[The Receivership Entities] do not have any revenue or income aside from the sale of solar lenses."[51]

---

[48] Receiver's Opposition at 12, ¶ 25 (citing Affiliates Order at 4, ¶ 2). Plaskolite objected to this fact on hearsay grounds. Plaskolite's Reply at 4-5. However, as specified in Section V.A.1 of this Memorandum Decision and Order, Plaskolite's objection is overruled because judicial notice is taken of facts from the CEC under Federal Rule of Evidence 201.

[49] Receiver's Opposition at 12, ¶ 26 (citing Affiliates Order at 1-2, ¶¶ 1-4). Plaskolite objected to this fact on hearsay grounds. Plaskolite's Reply at 4-5. However, as specified in Section V.A.1 of this Memorandum Decision and Order, Plaskolite's objection is overruled because judicial notice is taken of facts from the CEC under Federal Rule of Evidence 201.

[50] Receiver's Opposition at 12, ¶ 27 (citing Freeze Order at 18). Plaskolite objected to this fact on hearsay grounds. Plaskolite's Reply at 4-5. However, as specified in Section V.A.1 of this Memorandum Decision and Order, Plaskolite's objection is overruled because judicial notice is taken of facts from the CEC under Federal Rule of Evidence 201.

[51] Receiver's Opposition at 12, ¶ 28 (citing Freeze Order at 19). Plaskolite objected to this fact on hearsay grounds. Plaskolite's Reply at 4-5. However, as specified in Section V.A.1 of this Memorandum Decision and Order, Plaskolite's objection is overruled because judicial notice is taken of facts from the CEC under Federal Rule of Evidence 201.

**Plaskolite's Transactions with Receivership Entities**

26.     Plaskolite manufactures extruded sheet products made of various materials,

primarily acrylic.[52]

27.     The process for manufacturing extruded sheet products that contain a pattern is, in

summary, as follows:

> You have a very large extrusion line that has the roller with the pattern on it, and
> then another chrome roll for the other side. The plastic is melted at one end. It
> goes through the extruder. It goes through these two rolls where the one roll
> embosses the custom pattern onto the one surface, and then it comes down the
> line and it's cooled and then it's trimmed. And then parts are saved and put on a
> pallet.[53]

28.     Plaskolite and its predecessor sold solar lenses to IAS (a CEC Defendant and

Receivership Entity) beginning in January 2009.[54]

29.     On July 15, 2015, John Kupchick ("Kupchick"), a salesperson for Plaskolite and

IAS's primary contact at Plaskolite, received a call from Erin Healy Gallagher of the U.S.

Department of Justice inquiring about Plaskolite's customer IAS. Plaskolite's outside counsel

communicated with the Department of Justice attorney.[55]

30.     On January 13, 2017, Plaskolite received a subpoena in the Department of

Justice's Civil Enforcement Case.[56]

31.     Plaskolite's outside counsel communicated with the Department of Justice

---

[52] Plaskolite's Motion at 3, ¶ 1 (citing Hoffman Dep. at 11:6-12, docket no. 39-3, filed October 29, 2021).

[53] *Id*. at 3-4, ¶ 2 (citing Plaskolite Dep. at 45:19-46:9, docket no. 39-4, filed October 29, 2021).

[54] Receiver's Opposition at 12, ¶ 29 (citing Receiver's Declaration in Support of Motion for Summary Judgment ("Receiver Dec.") at 6, docket no. 52-3, filed December 10, 2021). Plaskolite did not dispute this fact. Plaskolite Reply at 4.

[55] Receiver's Opposition at 12, ¶ 30 (citing Plaskolite's 30(b)(6) Deposition, Exhibit L2 at 65:13-69:7, docket no. 52-7, filed December 10, 2021). Plaskolite did not dispute this fact. Plaskolite Reply at 4.

[56] Receiver's Opposition at 13, ¶ 32 (citing Plaskolite's Responses for Admission, Interrogatories, and Requests for Production of Documents, Exhibit M at 2, docket no. 52-12, filed December 10, 2021). Plaskolite did not dispute this fact. Plaskolite Reply at 4.

attorney.[57] The Department of Justice attorney did not: (1) advise Plaskolite to not engage in the transaction; (2) advise Plaskolite to review the CEC's complaint; or (3) indicate that the civil tax issue involved the promotion of tax fraud.[58] The Department of Justice asked Plaskolite for a copy of the invoice if the transaction was consummated.[59]

32.     On February 12, 2018, Kupchick received an email from Randale Johnson who indicated that IAS wanted to purchase an additional cylinder for IAS to manufacture additional solar lenses.[60]

32.     Kupchick knew Randale Johnson from prior transactions in which IAS had purchased products from Plaskolite.[61]

33.     Randale Johnson expressed interest in purchasing a roll to be customized for the manufacture of extruded sheet products.[62]

34.     Kupchick sent Randale Johnson quotations for a roll and sheet products.[63]

---

[57] Receiver's Opposition at 13, ¶ 35 (citing Plaskolite Dep. at 82:2-83:13). Plaskolite does not dispute this fact, but argues it is materially incomplete because it omits certain material facts. Plaskolite Reply at 4. Plaskolite's additional facts were added to this paragraph.

[58] Plaskolite's Reply at 4 (citing Deposition of Justin Roberts, Exhibit I at 15:3-16:14, 22:3-24:21, docket no. 62-3, filed January 14, 2022).

[59] Id. (citing Deposition of Justin Roberts, Exhibit I at 16:9-14, docket no. 62-3, filed January 14, 2022.

[60] Receiver's Opposition at 13, ¶ 33 (citing Plaskolite's 30(b)(6) Deposition, Exhibit L3 at 93:8-94:20, docket no. 52-8, filed December 10, 2021).

[61] Plaskolite's Motion at 4, ¶ 4 (citing Kupchick Dec., Exhibit D at 2, ¶ 3, docket no. 39-5, filed October 29, 2021). The Receiver did not dispute this fact. Receiver's Opposition at 3-6.

[62] Plaskolite's Motion at 4, ¶ 5 (citing Kupchick Dec. at 2, ¶ 4). The Receiver did not dispute this fact. Receiver's Opposition at 3-6.

[63] Plaskolite's Motion at 4, ¶ 6, (citing Kupchick Dec. at 2, ¶ 5, Kupchick Exhibit 1). The Receiver did not dispute this fact. Receiver's Opposition at 3-6.

35.     After Randale Johnson's inquiry, Plaskolite questioned internally whether it should pursue IAS's business in light of the CEC and the Department of Justice's subpoena concerning IAS.[64]

36.     Randale Johnson advised Kupchick that the purchaser would be Cobblestone, which according to Randale Johnson, had a licensing agreement with IAS.[65]

37.     Kupchick and Randale Johnson agreed on a price for the roll, $15,000.00 plus freight cost of $224.78.[66]

38.     Kupchick and Randale Johnson also agreed on a quantity and per-unit price for the lenses—8,000 units at $63.44 per unit, for a total price of $507,520.00—as well as other essential terms of the transaction including the dimensions of the products, and a 2% discount for payment in advance.[67]

39.     The transaction was documented in purchase orders issued by Cobblestone and pro forma invoices issued by Plaskolite for payment in advance.[68]

40.     On February 13, 2018, Kupchick spoke with Randale Johnson. Kupchick informed Randale Johnson that Plaskolite was contacted by the Department of Justice and that IAS's inquiry was under review by management.[69]

---

[64] Receiver's Opposition at 13, ¶ 34 (citing Plaskolite's 30(b)(6) Deposition, Exhibit L3 at 95:6-96:20, docket no. 52-8, filed December 10, 2021). Plaskolite did not dispute this fact. Plaskolite Reply at 4.

[65] Plaskolite's Motion at 4, ¶ 7, (citing Kupchick Dec. at 2, ¶ 6, Kupchick Exhibit 3). The Receiver did not dispute this fact. Receiver's Opposition at 3-6.

[66] Plaskolite's Motion at 5, ¶ 8, (citing Kupchick Dec. at 2, ¶ 7). The Receiver did not dispute this fact. Receiver's Opposition at 3-6.

[67] Plaskolite's Motion at 5, ¶ 9, (citing Kupchick Dec. at 3, ¶ 8). The Receiver did not dispute this fact. Receiver's Opposition at 3-6.

[68] Plaskolite's Motion at 5, ¶ 10, (citing Kupchick Dec. at 2-3, ¶¶ 7-9 Kupchick Exhibits 4-6). The Receiver did not dispute this fact. Receiver's Opposition at 3-6.

[69] Receiver's Opposition at 13, ¶ 37 (citing Plaskolite's 30(b)(6) Deposition, Exhibit L3 at 105:1-10, docket no. 52-8, filed December 10, 2021). Plaskolite does not dispute this fact, but argues it is materially incomplete because it

41.     On February 26, 2018, Kupchick asked IAS whether the IAS contact information was the same for the invoice. Randale Johnson indicated that the invoice should be sent to Cobblestone, instead of IAS. Randale Johnson stated Cobblestone had the licensing rights from IAS, but if it would be easier for Plaskolite, that IAS could purchase the products.[70] As Kupchick recalled, Randale Johnson explained that the dispute with the Department of Justice would likely be settled; that their system works and was proven by independent experts; and that IAS's customer was not worried about the dispute.[71]

42.     On February 26, 2018, Kupchick conducted research on IAS and forwarded a news release on IAS to his email account. The news release disclosed that the Department of Justice's CEC complaint against IAS stated:

> [T]he [CEC D]efendants allegedly know, or have reason to know, about the falsity of their statements, including that the lenses and the facility do not and will not produce solar energy that could be collected and used for any purpose that Congress intended to encourage through tax credits and that their customers are not engaged in any legitimate trade or business related to the scheme.[72]

---

omits certain material facts Plaskolite Reply at 4. Plaskolite's additional facts were added to the following paragraph. Plaskolite Reply at 4.

[70] Receiver's Opposition at 13-14, ¶ 38 (citing Plaskolite's 30(b)(6) Deposition, Exhibit L2 at 59:12-25, docket no. 52-7, filed December 10, 2021). Plaskolite does not dispute this fact, but argues it is materially incomplete because it omits certain material facts Plaskolite Reply at 4. Plaskolite's additional facts were added to this paragraph. Plaskolite Reply at 4.

[71] Plaskolite's Reply at 4 (citing Plaskolite Dep. at 100:2-104:25).

[72] Receiver's Opposition at 14, ¶¶ 39, 41 (citing Klein Dep. at 44:10-18, 62:1-12, docket no. 39-2, filed October 21 2021). Plaskolite attempts to dispute this fact on grounds that the Receiver mischaracterizes Kupchick's testimony and the subject of the press release. Plaskolite's Reply at 4 (citing Plaskolite Dep. at 127:5-135:13). But Plaskolite's objection is vague and does not explain how the Receiver mischaracterized Kupchick's testimony. Therefore, Plaskolite's objection is overruled.

43. The news release also stated the Department of Justice alleged the CEC Defendants engaged in a multi-level marketing scheme to enrich themselves and get customers to buy lenses.[73]

44. Plaskolite understood that the lenses mentioned in the news release were the lens products Plaskolite was selling to IAS.[74]

45. On April 30, 2018, Johnson signed the purchase order for the lenses and chrome roll as the president of Cobblestone.[75]

46. On May 2, 2018, Cobblestone sent payment to Plaskolite for the product.[76] Plaskolite received and processed the payment May 14, 2018.[77]

47. On or about May 14, 2018, Plaskolite received from Cobblestone two payments in advance in the form of checks totaling $515,362.64.[78]

48. After receipt of payment, Plaskolite shipped the roll to Cobblestone to be customized for the use of making the lenses.[79]

---

[73] Receiver's Opposition at 14, ¶ 42 (citing Klein Dep. at 42:3-43:18). Plaskolite attempts to dispute this fact on grounds that the Receiver mischaracterizes Kupchick's testimony and the subject of the press release. Plaskolite's Reply at 4. But Plaskolite's objection is vague and does not explain how the Receiver mischaracterized Kupchick's testimony. Therefore, Plaskolite's objection is overruled.

[74] Receiver's Opposition at 15, ¶ 43 (citing Plaskolite's 30(b)(6) Deposition, Exhibit L4 at 133-34:13-13 docket no. 52-9, filed December 10, 2021). Plaskolite attempts to dispute this fact on grounds that the Receiver mischaracterizes Kupchick's testimony and the subject of the press release. Plaskolite's Reply at 4. But Plaskolite's objection is vague, and Plaskolite does not explain how the Receiver mischaracterized Kupchick's testimony. Therefore, Plaskolite's objection is overruled.

[75] Receiver's Opposition at 15, ¶ 45 (citing Plaskolite's 30(b)(6) Deposition, Exhibit L4 at 142-43:16-25, docket no. 52-9, filed December 10, 2021). Plaskolite does not dispute this fact. Plaskolite Reply at 4-5.

[76] Receiver's Opposition at 15, ¶ 46 (citing Declaration of Receiver, Wayne Klein, Exhibit I ¶ 8 at 4, docket no. 52-3, filed December 10, 2021. Plaskolite does not dispute this fact. Plaskolite Reply at 4-5.

[77] Plaskolite's Response to Plaintiff's Requests for Admissions, docket no. 52-12, filed December 10, 2021.

[78] Plaskolite's Motion at 5, ¶ 11 (citing Kupchick Dec., Exhibit D at 3, ¶ 10, docket no. 39-5, filed October 29, 2021). The Receiver did not dispute this fact. Receiver's Opposition at 3-6.

[79] Plaskolite's Motion at 5, ¶ 12 (citing Kupchick Dec., Exhibit D at 3, ¶ 11). The Receiver did not dispute this fact. Receiver's Opposition at 3-6.

49.     Cobblestone had that roll customized and then returned it to Plaskolite; thereafter, Plaskolite manufactured 8,000 lenses and shipped them to Cobblestone.[80]

### Positions and Evidence in this litigation

50.     The Receiver makes no allegations in the Complaint that Cobblestone overpaid for the goods it received from Plaskolite, or that these goods were otherwise deficient.[81]

51.     The Receiver admits that the sale of goods by Plaskolite to Cobblestone was at a price negotiated at arm's-length:

> I don't question that the price that Cobblestone paid for the lenses and the rollers was negotiated at arm's length. And I have – and I have no reason to believe and we're not asserting that the – that Plaskolite charged a price higher than it would have to a buyer who would have engaged in a legitimate business.[82]

52.     The Receiver has taken no steps to value the Plaskolite goods either at the time of the transfers from Cobblestone or at any time thereafter.[83]

53.     In the depositions taken by or on behalf of the government or the Receiver in the Civil Enforcement Case, no questions were asked about why in 2018 goods were purchased from Plaskolite.[84]

54.     The Receiver has disclosed no expert in this case to offer an opinion on the value of the Plaskolite goods (or on any other issue).[85]

---

[80] Plaskolite's Motion at 5, ¶ 13, (citing Kupchick Dec. at Exhibit D at 3, ¶¶ 7-9, Kupchick Exhibits 4-6). The Receiver did not dispute this fact. Receiver's Opposition at 3-6.

[81] Plaskolite's Motion at 8, ¶ 30 (citing Complaint at 1-10).

[82] Plaskolite's Motion at 8-9, ¶ 31 (citing Klein Dep. at 43:24-44:9). The Receiver did not dispute this fact. Receiver's Opposition at 3-6.

[83] Plaskolite's Motion at 9, ¶ 32 (citing Klein Dep. at. 27:10-21). The Receiver did not dispute this fact. Receiver's Opposition at 3-6.

[84] Plaskolite's Motion at 9, ¶ 36 (citing Klein Dep. at 26:22-27:1). The Receiver did not dispute this fact. Receiver's Opposition at 3-6.

[85] Plaskolite's Motion at 9, ¶ 37 (citing Klein Dep. At 106:9-107:4). The Receiver did not dispute this fact. Receiver's Opposition at 3-6.

55.     The first claim for relief in the Complaint, based on Utah Code § 25-6-202(1)(a), alleges that Cobblestone made the transfers to Plaskolite "with actual intent to hinder, delay or defraud" its creditors.[86]

56.     Plaskolite was not an "insider" of any of the Receivership Entities.[87]

57.     Plaskolite did not retain possession of the property transferred—it was paid for and then delivered to Cobblestone.[88]

58.     The transfers, and the transaction to which they related, were not concealed; the transaction was documented in a customary way, and documentation of the transaction was available to the Receiver in the records available to him.[89]

59.     Prior to the transaction, the business of Cobblestone was well known to the Department of Justice, as was the past sale of goods by Plaskolite to IAS.[90]

60.     Cobblestone had not been sued, or threatened with suit, by any creditor (or anyone else) at the time of the transaction with Plaskolite.[91]

61.     The transfers did not involve substantially all of Cobblestone's assets. Cobblestone had approximately $2.65 million in its bank account on April 9, 2018 (before the

---

[86] Plaskolite's Motion at 10, ¶ 38 (citing Complaint at 5-6, ¶¶21-27). The Receiver did not dispute this fact. Receiver's Opposition at 3-6.

[87] Plaskolite's Motion at 10, ¶ 39 (citing Hoffman Dep. at 39:2-10). The Receiver did not dispute this fact. Receiver's Opposition at 3-6.

[88] Plaskolite's Motion at 10, ¶ 40 (citing Klein Dep. at 106:9-18). The Receiver did not dispute this fact. Receiver's Opposition at 3-6.

[89] Plaskolite's Motion at 10, ¶ 41 (citing Klein Dep. at 44:10-18, 62:1-12). The Receiver argues this fact is disputed because the CEC Defendants used Cobblestone to purchase the lenses from Plaskolite instead of IAS, the entity that had previously purchased the lenses and which was in the middle of the CEC bench trial. Receiver's Opposition at 4. The Receiver's objection is overruled. The Receiver did not dispute the asserted fact, but rather only provided additional facts.

[90] Plaskolite's Motion at 10, ¶ 42 (citing Klein Dep. at 42:3-43:18). The Receiver did not dispute this fact. Receiver's Opposition at 3-6.

[91] Plaskolite's Motion at 10, ¶ 43 (citing Klein Dep. at 107:5-8). The Receiver did not dispute this fact. Receiver's Opposition at 3-6.

transfers), and approximately $2.05 million in its bank account on May 21, 2018 (after the transfers), with no recorded liability on the books and records of Cobblestone (or otherwise).[92]

62.     Cobblestone did not abscond: the Receiver conducted discovery regarding Cobblestone in the Civil Enforcement Case, including a deposition of Randale Johnson among other depositions.[93]

63.     The Receiver has not identified any assets of Cobblestone that he could not locate.[94]

64.     Cobblestone's records reflect no substantial (or any) debt incurred shortly before or shortly after the transfers, and neither the Receiver nor his agent, Mr. Hoffman, can identify any transaction of Cobblestone recorded as a liability.[95]

65.     The Receiver has no evidence that Plaskolite had a lien on any assets of Cobblestone.[96]

### Plaskolite and Cobblestone in the Civil Enforcement Case

66.     Plaskolite was not a party to the Civil Enforcement Case.[97]

---

[92] Plaskolite's Motion at 11, ¶ 44 (citing Hoffman Dep. at 28:20-29:9, 43:3-20; List of Cobblestone Bank Transactions, and Related Documents, docket no. 39-6, filed October 29, 2021. The Receiver did not dispute this fact. Receiver's Opposition at 3-6.

[93] Plaskolite's Motion at 11, ¶ 45 (citing Klein Dep. at 17:5-20:22). The Receiver did not dispute this fact. Receiver's Opposition at 3-6.

[94] Plaskolite's Motion at 11, ¶46 (citing Klein Dep. At 107:9-13). The Receiver did not dispute this fact. Receiver's Opposition at 3-6.

[95] Plaskolite's Motion at 12, ¶ 49 (citing Hoffman Dep. at 40:25-41:8; Klein Dep. at 51:17-52:19). The Receiver did not dispute this fact. Receiver's Opposition at 3-6.

[96] Plaskolite's Motion at 12, ¶ 50 (citing Klein Dep. at 105:20-106:1). The Receiver did not dispute this fact. Receiver's Opposition at 3-6.

[97] Plaskolite's Motion at 12 ¶ 52 (citing Klein Dep. at 30:2-8). The Receiver did not dispute this fact. Receiver's Opposition at 3-6.

67.     The Department of Justice did not sue Cobblestone in the Civil Enforcement Case.[98]

68.     The Department of Justice asserted no claims against Cobblestone in the Civil Enforcement Case.[99]

69.     No monetary judgment was entered against Cobblestone in the Civil Enforcement Case.[100]

70.     The Receiver has no information suggesting that Plaskolite had any involvement in the sale of solar energy systems by any of the Receivership Entities.[101]

71.     The Receiver has no information indicating that Plaskolite had any involvement in giving advice to anybody doing business with any of the Receivership Entities about tax benefits, tax credits, or tax-related issues.[102]

### Evidence about Cobblestone

72.     Cobblestone had no source of income from any legitimate business operations, and over 99.8% of the money Cobblestone received came from CEC Defendants and insiders.[103]

---

[98] Plaskolite's Motion at 12, ¶ 53 (citing Klein Dep. at 30:9-1).

[99] *Id.* at 12 ¶ 54 (citing CEC Complaint).

[100] *Id.* at 13, ¶ 56 (citing Klein Dep. at 30:12-15). The Receiver did not dispute this fact. Receiver's Opposition at 3-6.

[101] Plaskolite's Motion at 13, ¶ 57 (citing Klein Dep. at 109:1-7). The Receiver did not dispute this fact. Receiver's Opposition at 3-6.

[102] Plaskolite's Motion at 13, ¶ 58 (citing Klein Dep. at 110:10-15). The Receiver did not dispute this fact. Receiver's Opposition at 3-6.

[103] Receiver's Opposition at 17, ¶ 57 (citing Klein Decl. at 4, docket no. 51-4, filed December 10, 2021). Plaskolite did not dispute this fact. Plaskolite Reply at 2.

73.     Cobblestone transferred substantially all its assets to Glenda Johnson on June 22, 2018, the date the court in the CEC issued its findings on the record that the CEC Defendants had engaged in a "massive fraud."[104]

## IV.     STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A factual dispute is genuine when "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way"[105] or "if a reasonable jury could return a verdict for the nonmoving party."[106] A fact is material if "it is essential to the proper disposition of [a] claim."[107] And in ruling on a motion for summary judgment, "the factual record" and "all reasonable inferences" are viewed in a light most favorable to the nonmoving party.[108]

"[A]t the summary judgment stage the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[109] "To survive summary judgment, [the plaintiff must] present some evidence beyond the allegations in [the] complaint to support [the plaintiff's] allegations.[110]

---

[104] Receiver's Opposition at 17, ¶ 58 (citing *United States of America v. RaPower-3, et. al.*, 2:15-cv-00828-DN-DAO, Civil Contempt Order RE: Neldon Johnson, Glenda Johnson, Lagrand Johnson, and Randale Johnson, docket no. 947, filed July 6, 2020). Plaskolite did not dispute this fact. Plaskolite's Reply at 2.

[105] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[106] *Universal Money Ctrs., Inc. v. Am. Tel. & Tel. Co.*, 22 F.3d 1527, 1529 (10th Cir. 1994).

[107] *Adler*, 144 F.3d at 670.

[108] *Id*.

[109] *Forth v. Laramie Cnty. Sch. Dist. No. 1*, 85 F.4th 1044, 1052 (10th Cir. 2023).

[110] *Askew v. United States*, No. 23-3046, 2024 WL 242858, *2 (10th Cir. Jan. 23, 2024) (internal quotations omitted).

## V.  DISCUSSION

### A.  The Civil Enforcement Case Findings May Be Used in this Case

Plaskolite objects to the Receiver's use of findings made in the CEC Main Findings, and in other CEC decisions and orders (collectively the "CEC Findings") arguing that:

(1) neither Plaskolite nor Cobblestone were parties to the CEC;

(2) the Receiver relies so heavily on the CEC Findings that "he has no intention of proving the 'tax fraud' he alleges in the Complaint";

(3) there is a total disconnect between the CEC "tax fraud" issues and whether a creditor of Cobblestone was defrauded by the Transfers to Plaskolite; and

(4) even if the Receiver could rely on the CEC Findings, some of the findings directly defeat the Receiver's claims against Plaskolite.[111]

Plaskolite's Reply also raises a hearsay objection and personal knowledge objections to the Receiver's Declaration.[112] And Plaskolite argues that documents attached to the Receiver's Declaration are hearsay, "if not double hearsay."[113]

In analyzing Plaskolite's argument about the CEC Findings, a significant distinction must be noted between (a) the findings and orders adjudicating the fraud and establishing the receivership, and (b) the facts pertaining to the transactions between the Receivership Entities and Plaskolite ("Plaskolite Transactions"). The fraud has been adjudicated in the CEC and the receivership has been established.[114] However, the facts regarding the Plaskolite Transactions are the subject of this litigation. Nothing in the CEC Findings impinges on the facts regarding the Plaskolite Transactions. And the briefing on Plaskolite's Motion for Summary Judgment establishes that many material facts relating to the Plaskolite Transactions are not in dispute.[115]

---

[111] Plaskolite's Motion at 26.

[112] Plaskolite's Reply at 5.

[113] *Id*. at 8-9.

[114] *Supra*, Undisputed Material Facts ¶¶ 1-25.

[115] *Id*. at ¶¶ 26-73.

### 1.  Judicial Notice May Be Taken of Findings in the Civil Enforcement Case

The Tenth Circuit Court of Appeals confronted similar concerns in another ancillary case arising out of this receivership. Trudy Shepherd, "a salesperson who sold solar lenses to investors,"[116] sought to "collaterally attack[] the factual findings made in the Civil Enforcement Case."[117]

> [S]he claims . . . the solar energy tax scheme was a legitimate enterprise. Indeed, she asserts that the solar lenses were "fully operational," and would eventually be used to produce electricity. As such, she attempts to relitigate the factual findings and legal conclusions reached and affirmed in the Civil Enforcement case.[118]

Examining her argument in a plain error analysis, the Tenth Circuit determined that "the district court appropriately took judicial notice of the factual findings that it made in the Civil Enforcement Case under Federal Rule of Evidence 201."[119] The Tenth Circuit relied on its opinion in a case over 40 years old:

> We have made clear that a district court may "take judicial notice, whether requested or not . . . of its own records and files, and facts which are part of its public records." Indeed, "[j]udicial notice is particularly applicable to the court's own records of prior litigation closely related to the case before it."[120]

Judicial notice of the core facts found in the Civil Enforcement Case establishing the receivership is appropriate. The Receiver has filed over 80 ancillary actions. Relitigating core facts that established the receivership in each of these ancillary actions would dissipate the receivership assets, defeating its very purpose. And those foundational facts to the receivership are not unique to the Receiver's claims against Plaskolite or others from whom disgorgement is sought.

---

[116] *Klein v. Shepherd*, No. 21-4064, 2023 WL 4542160, *1 (10th Cir. July 14, 2023).

[117] *Id*. at *5.

[118] *Id*.

[119] *Id*.

[120] *Id*. (quoting *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp*., 605 F.2d 1169, 1172 (10th Cir. 1979)).

**2.  The Dangers of Use of Judicial Opinions from Other Cases Are Not Present Here**

Plaskolite relies on *MCC Mgmt. of Naples, Inc. v. Int'l Bancshares Corp.*[121] to support its argument that the CEC Findings are inadmissible hearsay.[122] In that case, the district court considered the admission of a judicial opinion issued in a Florida malpractice and fraud conspiracy case, finding that two lawyers had not violated ethical rules or attorney client privilege in handling some evidence. The district court was managing a trial in which those lawyers as plaintiffs sued for breach of contract and fraud in a dispute over tax benefits. Use of the Florida opinion as evidence in the Oklahoma case was hotly contested.

The Tenth Circuit in *MCC* quoted and relied on *Johnson v. Colt Indus. Operating Corp.*, a 1986 case arising out of Kansas in which "a Missouri state-court decision [was erroneously introduced] to show that a Colt executive knew that a dropped pistol could discharge."[123] Based on this, Plaskolite argues *MCC* holds that judicial opinions in other cases are hearsay, so any reliance on orders and findings from the Civil Enforcement Case is forbidden.[124] Plaskolite is incorrect.

In *Johnson*, the Tenth Circuit recognized that "the admission of a judicial opinion as substantive evidence presents obvious dangers."[125] The court detailed several problems, including jury confusion about (a) weight to be given the opinion as evidence, (b) the binding effect of the opinion in the case, or (c) whether the opinion overrides the jury instructions.[126] And the court cautioned "a judicial opinion should be admitted as substantive evidence of a

---

[121] 468 Fed. App'x 816, 823 (10th Cir. 2012).

[122] Plaskolite's Reply at 6.

[123] *MCC*, 468 Fed. App'x at 823.

[124] Plaskolite's Reply at 6.

[125] *Johnson v. Colt Indus. Operating Corp.*, 797 F.2d 1530, 1534 (10th Cir. 1986).

[126] *Id.* at 1534.

similar accident only in the rarest of cases when no other form of evidence is available and then only with detailed limiting instructions."[127] But the 1986 *Johnson* opinion determined that admission of the judicial opinion from Missouri was harmless error.[128]

> And in the 2012 *MCC* case, the Tenth Circuit observed:
>
> The guiding principle, then, in admitting what we might call "judicial" evidence is that, notwithstanding its special potency, it must be treated like any other evidence. There is no bright-line rule against its admission. In evaluating whether the district court's Rule 403 balancing was an abuse of discretion, we might consider: How aggressive was the use of the prejudicial evidence? Were other means available to establish the claim or defense? What exactly was the judicial finding? Was it a factual finding? Above all, the question is: did the judicial representation prevent the jury from making its own, and perhaps different, finding?[129]

Thus, the Tenth Circuit calls for a fact sensitive analysis of the use of judicial records and opinions.

Here, the Receiver is not seeking to introduce judicial orders into evidence, but to rely on adjudicated facts establishing the legitimacy, purpose, and scope of the receivership. And unlike *Johnson*, the 1986 product liability case, the Receiver does *not* allege similarity of Plaskolite Transactions to any other ancillary case seeking recovery for a fraudulent transfer. Instead, the Receiver relies on the CEC Findings to explain the *existence* of the receivership and the *context* in which the Plaskolite Transactions occurred. The substance of the Plaskolite Transactions is the subject of this litigation.

Additionally, unlike *MCC*, the 2012 malpractice fraud and conspiracy case, the Civil Enforcement Case orders and findings are not central to the dispute between the Receiver and Plaskolite. The orders and findings are *foundational* to the Receiver's role

---

[127] *Id.*

[128] *Id.* at 1535.

[129] *MCC,* 468 Fed. App'x at 824.

and the context of the Receiver's claims against Plaskolite. Plaskolite has the ability to litigate the unique issues that pertain to it, as an alleged debtor to the receiver-creditor. This litigation is about whether the Plaskolite Transactions are transfers subject to voiding or led to Plaskolite's unjust enrichment. But the predicate fraud, status of the defunct enterprises, and the status of the Receiver are not open to re-litigation.

The jury in this case will not be given judicial opinion documents but will be instructed on facts found in the Civil Enforcement Case, and will be fully aware of the reasons for the receivership's establishment. Likewise, the CEC Findings are used in this Memorandum Decision and Order.

### 3. Receivership and UVTA Proceedings Have Equitable Natures

Plaskolite is under the impression that principles of equity do not aid the Receiver. But imposition of a receivership is, itself, an equitable remedy. And restoration of property improperly transferred from others is an equitable remedy, whether by statutorily defining voidable transfer standards or unjust enrichment. In a similar securities receivership setting, the Ninth Circuit Court of Appeals stated:

> The federal courts have inherent equitable authority to issue a variety of "ancillary relief" measures in actions brought by the SEC to enforce the federal securities laws. . . . The power of a district court to impose a receivership or grant other forms of ancillary relief does not in the first instance depend on a statutory grant of power from the securities laws. Rather, the authority derives from the inherent power of a court of equity to fashion effective relief.[130]

The inherent power of the court to fashion effective relief requires that Plaskolite be able to fully litigate the issues in its transactions with the Receivership Entities, but not that the basis

---

[130] *S.E.C. v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980).

of the receivership be re-litigated. The goal of receiverships in protecting assets invites the court to conserve resources and avoid "expensive, distracting, and complex satellite litigation."[131]

### 4. Issue Preclusion, Collateral Estoppel, and Res Judicata Are Inapplicable

Against this backdrop, Plaskolite's arguments about issue preclusion, collateral estoppel, and res judicata are misplaced.[132] The CEC Findings can be relied on through judicial notice as the context for this lawsuit by the Receiver. Core conclusions in the CEC, such as the existence of the tax fraud practiced by the entities controlled by Johnson and the representative status and powers of the Receiver are subject to judicial notice in this litigation and cannot be challenged by Plaskolite. Regardless, Plaskolite has not presented sufficient evidence to dispute these facts and its legal challenges to these facts cannot succeed. But the facts regarding the Cobblestone-Plaskolite transactions were not determined in the CEC. They are to be decided in this litigation.

Plaskolite's position is similar to that of a garnishee from whom property is sought to satisfy an established civil monetary judgment. "The remedies of attachment and garnishment are in aid of and ancillary to the main action and have nothing to do with the merits."[133] The garnishee is not permitted to challenge the underlying debt after it is adjudicated against the debtor. But the garnishee may challenge the propriety of garnishing the specific property of the debtor that the garnishee holds.

### 5. Plaskolite Is Not Denied Due Process

Plaskolite argues that "[a]ny consideration in the present case of the findings in the Civil Enforcement Case as binding on Plaskolite would violate Plaskolite's fundamental right to due

---

[131] *Fed. Trade Comm'n v. Noland,* No. CV-20-00047-PHX-DWL, 2020 WL 4530459, *7 (D. Ariz. Aug. 6, 2020).

[132] Plaskolite's Motion at 26-27.

[133] *Spears v. Preble*, 661 P.2d 1337, 1343 (Okla. 1983).

process."[134] But Plaskolite does not consider: (a) that the essential components of due process may be provided in many forms; or (b) that due process does not require re-litigation of facts that are not central to claims and defenses between parties.

"Due process requires notice and an opportunity to be heard. Due process essentially requires that the procedures be fair. The process that is due varies according to the nature of the right and to the type of proceedings."[135] "A district court does not generally abuse its discretion if its summary procedures permit parties to present evidence when the facts are in dispute and to make arguments regarding those facts."[136]

In *SEC v. Elliott,* the district court ordered the liquidation of Ponzi scheme assets and established a claims procedure by which claimants would file proofs of claim.[137] The receiver filed a proposed plan of distribution and the court required "fill-in-the-blank pleading forms for filing objections within thirty days of the notice."[138] The receiver filed responses to the written objections and the court entered a distribution order, without any hearings. Two claimants had "filed a motion asking for a hearing, intervention, and limited discovery on the issue of fraudulent transfer" but the district court held no hearing and provided no reasoning in its final order.[139] The Eleventh Circuit Court of Appeals determined that a hearing on the claims was necessary to ensure fairness for these claimants.[140] But other claimants who wanted a hearing

---

[134] Plaskolite's Motion at 27.

[135] *S.E.C. v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992).

[136] *Id.* at 1567.

[137] *Id.* at 1566.

[138] *Id.*

[139] *Id.* at 1568.

[140] *Id.*

and did not receive one at the district court found no relief on appeal.[141] The Eleventh Circuit stated "we hold that summary proceedings do not per se violate claimants' due process interest."[142]

Another *Elliott* claimant was sued by the receiver in an ancillary action, but the district court ordered resolution of the claims in the principal receivership proceeding. The district court did not permit the claimant "discovery or an opportunity to present evidence on his claims and defenses," and summarily denied presentation of a setoff claim.[143] The Eleventh Circuit ordered further proceedings.[144]

Each of the appealing claimants in *Elliot* was permitted to litigate *their claims*, but none of the proceedings ordered by the Eleventh Circuit required re-litigation of the *fraud* that established the receivership. Contrary to Plaskolite's arguments, there is no hard and fast rule about the form of proceedings that provide due process. Requiring re-litigation of the entire foundation of the receivership in adjudication of each ancillary case and claim would be a waste of judicial resources. Plaskolite has been and will be afforded the opportunity to present evidence on the entirety of the transactions between it and the entities supervised by the Receiver.

The close integration between a receivership and disgorgement proceedings such as this is illustrated in *S.E.C. v. Wencke*.[145] In *Wencke*, the receiver sought "disgorgement in summary post-judgment proceedings" rather than in "the independent action [the receiver] filed in 1980."[146] Similar to the Eleventh Circuit in *Elliott,* the Ninth Circuit in *Wencke* disavowed bright

---

[141] *Id.* at 1570.

[142] *Id.* at 1571.

[143] *Id.* at 1572.

[144] *Id.* at 1575.

[145] 783 F.2d 829 (9th Cir. 1986).

[146] *S.E.C. v. Wencke*, 783 F.2d 829, 836 (9th Cir. 1986).

line procedural strictures. "[T]o determine the adequacy of a summary proceeding in a given case, courts must focus not on the form of the proceedings, but on their substance[.]"[147] Even though there was neither a complaint nor an answer, "the parties . . . had notice concerning the nature of the proceedings, were permitted extensive discovery, including the taking of depositions, and were permitted to file briefs and exhibits with the district court, and . . . the district court applied the Federal Rules of Evidence and Civil Procedure."[148] Plaskolite has all those benefits in defending the Receiver's claims against it. Due process is not violated.

**6.   There Is No Disconnect Between the Civil Enforcement Case and This Case**

Plaskolite also argues there is a "disconnect" between the CEC and this case.[149] Because no legal authority is cited by Plaskolite in this section of the argument, this Memorandum Decision and Order will only examine the two logical points Plaskolite makes.

First, Plaskolite correctly points out that Cobblestone was not a CEC Defendant. Plaskolite is correct that "[t]he Civil Enforcement Case was about alleged tax fraud engaged in by the [CEC D]efendants being sued by the DOJ – which defendants, notably, did NOT include Cobblestone."[150] However, the Affiliates Order determined that Johnson created, controlled, and owned Cobblestone, and that Cobblestone was used by the CEC Defendants "to perpetrate a fraud to enable funding for Neldon Johnson."[151] Rarely can every entity in a complex scheme be identified at the start of litigation, but the failure to discover all entities does not immunize entities from asset tracing. While Cobblestone was not a CEC Defendant[152] and was not subject

---

[147] *Id.* at 836.

[148] *Id.* at 836-837.

[149] Plaskolite's Motion at 28.

[150] *Id.*

[151] Affiliates Order at 4, ¶ 2.

[152] *Id.*

to the first post-trial injunction,[153] the Receiver intends to produce (and has produced) evidence that the Cobblestone funds used in the transfers to Plaskolite came from RaPower, the principal entity CEC Defendant.[154] The Receiver is authorized to seek recovery of receivership assets, which includes funds transferred to third-party entities. Therefore, the Receiver may seek the funds that Cobblestone transferred to Plaskolite.

Second, Plaskolite argues that there is no creditor under the UVTA.[155] This argument is rejected and disposed of in Section V.B.1. The Receiver is the creditor on behalf of the defrauded Receivership Entities.

Therefore, there is no "disconnect" between the CEC and this case that would preclude the Receiver's claims against Plaskolite.

### 7. Plaskolite's Hearsay, Personal Knowledge, "Commentary," and Authentication Objections are Overruled

Plaskolite's Reply raises four primary objections to materials the Receiver presents in opposition to Plaskolite's Motion.

    a.  Hearsay;

    b.  Lack of personal knowledge;

    c.  "Commentary;" and

    d.  Lack of authentication.[156]

**Hearsay Objections.** Plaskolite's first hearsay objection is to the CEC materials attached to the Receiver's Opposition as Exhibits J, K, O, P, Q, and R. These are:

---

[153] Plaskolite's Motion at 29.

[154] Transfers from RAPower-3 to Cobblestone Centre 2013-2018, docket no. 52-3, filed December 10, 2021.

[155] Plaskolite's Motion at 28; Plaskolite's Reply at 19.

[156] Plaskolite's Reply at 5.

- Affiliates Order, docket no. 636, 2:15-cv-828, filed May 3, 2019, attached to Opposition as Exhibit J, docket no. 52-4, filed December 10, 2021.

- Memorandum Decision and Order Freezing Assets and to Appoint a Receiver, docket no. 444, 2:15-cv-828, filed August 22, 2018, attached to [Receiver's] Opposition to Motion for Summary Judgment of Defendant Plaskolite, LLC ("Opposition"), as Exhibit K, docket no. 52-5, December 10, 2021.

- Corrected Receivership Order, docket no. 491, 2:15-cv-828, filed November 1, 2018, attached to Opposition at Exhibit O, docket no. 52-14, filed December 10, 2021.

- Bench Ruling, Civil Enforcement Case, June 22, 2018, portion of docket no. 421, 2:15-cv-828, filed June 20, 2019, attached to Opposition at Exhibit P, docket no. 52-15, filed December 10, 2021.

- Memorandum Decision and Order Granting Turnover Motion; Denying Motion to Strike; Overruling Objection to Authentication of Exhibits; and Overruling Objection to Rejection of Reputed Contract, Docket No. 1007, 2:15-cv-828 filed September 15, 2020, attached as Exhibit Q to Opposition, docket no. 52-17.

- Civil Contempt Order Re: Neldon Johnson, Glenda Johnson, LaGrand Johnson, and Randale Johnson, docket no. 947, 2:15-cv-828, filed July 6, 2020, attached as Exhibit R to the Opposition, docket no. 52-17, filed December 10, 2021.

Each of these Exhibits is an order from the CEC. And none of these Exhibits contains facts about the Plaskolite Transactions. The facts established in the CEC are not at issue in this case. These Exhibits are contextual, foundational, and distinct from the factual merits of the Plaskolite Transactions. These documents are not hearsay in this proceeding between the Receiver and Plaskolite.

Plaskolite's second hearsay objection is that the Receiver's Declaration[157] opposing the Motion "contains hearsay if not double hearsay."[158] Each of the hearsay objections will be examined in turn.

---

[157] Receiver Decl. at 1-4, docket no. 51-4, filed December 10, 2021.

[158] Plaskolite's Motion at 8.

*Websites of Public Agencies:* Without specifically identifying documents, Plaskolite objects to documents attached to the Receiver's Declaration reportedly obtained "from the website of a public agency . . . [and] from another entity, such as a law firm . . . [as] hearsay where, as here, they are offered for the truth of the matters asserted therein."[159] Plaskolite does not specify how these unidentified documents relate to specific facts or paragraphs in the Receiver's Declaration.

It is likely Plaskolite refers to the Findings of Fact, Conclusions of Law, and Order of the Securities Division of the Department of Business Regulation of the State of Utah issued in 1989. This document found that CEC Defendant IAS violated Utah securities laws, requiring rescission to be offered all purchasers, pay a forfeiture, and stop using unregistered salespersons. This document supports the Receiver's Declaration ¶ 4:

> The lens purchase investment program created and sold by IAS, RaPower, XSun, Solco, and other affiliates of Neldon Johnson was not registered with the Utah Division of Securities ("Securities Division").

This fact is of little significance in this case and is not included in the Undisputed Material Facts.

Plaskolite is also likely referring to:

(a)     a few pages from the website of the Utah Division of Securities purporting to show that no records are on file for RaPower, XSun, Solco, Cobblestone Centre, and LTB1, which support the Receiver's Declaration ¶ 4.c. that "a search of the online database of the Securities Division . . . reported that there were no filings of registrations or exemptions by any of those entities."

(b)     a few pages from the EDGAR database of the SES which support the Receiver's Declaration ¶ 5 that "there were "no filings by RaPower, LTBl, or Cobblestone Centre."

---

[159] *Id*. at 9.

Those statements are of no consequence in this case. Additionally, this hearsay argument relating to websites is underdeveloped and inadequately briefed.[160] This objection is overruled.

*Documents from another entity:* Plaskolite objects to the Receiver's Declaration including "[d]ocuments reportedly obtained from another entity, such as a law firm . . . ."[161] There are no such documents attached to the Receiver's Declaration. This argument underdeveloped and inadequately briefed and overruled.

*Deposition excerpts:* Plaskolite objects to the Receiver's Declaration attaching "[e]xcerpts of depositions taken in another case, to which Plaskolite was not a party . . . ."[162] One excerpt from one deposition – that of Neldon Johnson – is attached to the Receiver's Declaration. It is attached to support the Receiver's Declaration ¶ 4d. that Neldon Johnson admitted in the deposition that "IAS has sold unregistered stock to RaPower and another affiliated entity, Solstice Enterprises." This fact is of no consequence in this case. The objection is overruled.

**Lack of personal knowledge.** Plaskolite objects that the Receiver's Declaration is "not based on the Receiver's personal knowledge."[163] This objection appears to apply to "Paragraph 3 [which allegedly] includes factual statements plainly not based on personal knowledge."[164] That paragraph reads:

> RaPower-3, LLC and other companies affiliated with Neldon Johnson sold solar lenses to purchasers. The solar lenses were combined with a maintenance and operations agreement by which one of the Johnson affiliates would install and maintain the lenses, collect revenues generated from operation (or rental) of the lenses, and remit promised profits to the lens purchasers.[165]

---

[160] *Valdez v. Macdonald*, 66 F.4th 796, 834 (10th Cir. 2023).

[161] Plaskolite's Reply at 9.

[162] Plaskolite's Reply at 9.

[163] *Id*. at 8.

[164] *Id*. at 9.

[165] Receiver's Declaration at 2, ¶ 3.

Significant foundation for this paragraph is laid in the two paragraphs that precede it, explaining the Receiver's appointment and "extensive investigation of the [CEC] Defendants and Receivership Entities" and this paragraph is also a summary of the CEC Findings.[166] This objection is overruled.

**"Commentary" objection.** Without citation of authority, Plaskolite objects that paragraphs 4 through 8 of the Receiver's Declaration contains "commentary," which is also "objectionable as improper belated expert opinion . . . ."[167] This objection is not articulated with sufficient clarity to warrant analysis. But the contents of these paragraphs are recitations of information gathered in the course of the Receiver's work, and fully within his competence in that capacity. This objection is overruled.

**Lack of Authentication.** Plaskolite objects that three exhibits from the CEC attached as Exhibit H[168] to the Receiver's Opposition on the basis that they are not authenticated.[169] These documents were footnoted to the Receiver's Statement of Undisputed Facts ¶ 14:

> The Receivership Defendants advertised substantial returns and tax benefits in exchange for only a down payment on the solar lenses.

That fact is a summary of CEC Main Findings ¶¶ 211-214, which were critical to the tax fraud scheme, and the image in Exhibit 496 is part of the CEC Main Findings ¶ 211. That paragraph also references Exhibits 497 and 777.

As specified in Section V.A.1. of this Memorandum Decision and Order, judicial notice is taken of facts from the CEC under Federal Rule of Evidence 201.[170] The Chart from the fourth

---

[166] CEC Main Findings ¶¶ 16, 75-86, 141, 285, 316-317.

[167] Plaskolite's Reply at 9.

[168] CEC Exhibits 496, 497, and 777, docket no. 52-2, filed December 10, 2021.

[169] Plaskolite's Reply at 9.

[170] *Shepherd*, 2023 WL 4542160, *3.

page of Exhibit H was used in the CEC and in Paragraph 12 of the Undisputed Material Facts of this Memorandum Order and Decision.[171] Therefore, as noted in footnote 38 to Paragraph 12 in the Undisputed Material Facts, Plaskolite's objection is overruled.

### 8. Facts Found in the Civil Enforcement Case Do Not Defeat the Receiver's Claim

Finally, Plaskolite argues that CEC evidence and CEC Main Findings cut against the Receiver's claims against Plaskolite.[172] Plaskolite makes two arguments: (a) that the CEC Main Findings determined the value of the lenses, and (b) that since Cobblestone was not prevented from engaging in the solar lens business, "Cobblestone could engage in a business related to solar energy even after the [c]ourt issued its findings in the Civil Enforcement Case."[173] These arguments fail on summary judgment.

**Lens Value Findings.** Plaskolite marshals the CEC Main Findings in support of its argument that the Receiver is bound by a finding of value:

> Specifically, in paragraphs 415-419 of its Findings of Fact and Conclusions of Law, the Court found that the value of goods that Plaskolite provided was what Plaskolite was paid for them. Specifically, the Court found that Plaskolite was paid between $52 and $70 for rectangular sheets of plastic; that each sheet could be cut into a triangular lens; that there was no other credible evidence about other possible costs of a lens; and that "[t]he correct valuation of a 'lens' is close to its raw cost, and does not exceed $100."[174]

Plaskolite argues that this finding "directly defeats the [Receiver]'s contention that Cobblestone did not receive reasonably equivalent value."[175] Plaskolite is incorrect.

---

[171] *Supra*, Undisputed Material Facts ¶ 12; CEC Main Findings at 37; Receiver's Opposition at 8-9, ¶ 14 (citing Charts of Entities at 1).

[172] Plaskolite's Motion at 28-29.

[173] *Id*. at 24.

[174] *Id*. at 28-29.

[175] *Id*. at 28.

First, Plaskolite measures "reasonably equivalent value" in the wrong way. "[I]n determining whether reasonably equivalent value was given, the focus is on whether the debtor [Receivership Entities] received reasonably equivalent value from the transfer."[176] "In other words, the question is not *whether [Plaskolite] 'gave* reasonably equivalent value; it is *whether [the Receivership Entities] received* reasonably equivalent value.'"[177]

Second, in the CEC Main Findings, the issue was value of the lenses relative to the price investors paid for lenses. A high sale price allowed larger tax credits and benefits to be claimed. An inflated price was evidence of fraud. The finding preceding those cited by Plaskolite made this comparison: "[The CEC] Defendants [sold] a single solar lens for a total purported price of $3,500."[178] Thus, the issue in the CEC Main Findings was not the value to the Receivership Entities, but the value of the lenses in the consumer market.

Value of the lenses *to the Receivership Entities* has not been established by evidence in the CEC or on Plaskolite's Motion. The Receiver argues that "Cobblestone and the Receivership Entities received no value from the purchase"[179] because "[the CEC] Defendants' technology does not work, and is not likely to work to produce commercially viable electricity or solar process heat. Therefore, each 'lens' is just one component of an inoperable system."[180] This logical argument was unsupported by case law and cannot be determined at this time on Plaskolite's Motion.

---

[176] *Miller v. Wulf*, 84 F. Supp. 3d 1266, 1276 (D. Utah 2015).

[177] *Klein v. Michelle Turpin & Assocs., P.C.*, No. 2:14-CV-00302-RJS-PMW, 2016 WL 3661226, *7 (D. Utah July 5, 2016) (citations omitted; emphasis added).

[178] CEC Main Findings at 83, ¶ 415.

[179] Receiver's Opposition at 23.

[180] CEC Main Findings at 120.

**No Bar Against Cobblestone Selling Lenses.** Plaskolite's second argument based on the CEC Findings is that "the Court did not even then issue any injunction against Cobblestone, nor did the Court enjoin any of the persons who may have had some connection to Cobblestone from engaging in a business relating to solar energy system."[181] Plaskolite is correct that there was no order preventing Cobblestone or Randale Johnson from purchasing lenses at the time the order was entered, when the payment was made and received, and when the lenses were delivered. However, this fact is not conclusive in determining whether any value was received by Cobblestone, which later became and is now a Receivership Entity. This fact is not by itself decisive of the Receiver's claims.

### B. First Claim: Receiver's UVTA Claim

Plaskolite argues the Receiver's first claim under the UVTA, Utah Code § 25-6-202(1)(a), must be dismissed because: (1) the applicable statutes require a debtor-creditor relationship; and (2) there is no evidence that Cobblestone had any creditors.[182] Additionally, Plaskolite argues the Receiver's theory does not identify an entity that is "any creditor of the debtor" under § 25-6-202(1)(a) because the Receiver did not list an entity that was harmed by the transaction.[183] In response, the Receiver argues he has standing to "stand in the shoes" of the defrauded Receivership Entities, including Cobblestone, and to assert claims under Utah Code § 25-6-202(1)(a) as a creditor.[184] The Receiver is correct.

---

[181] Plaskolite's Motion at 29.

[182] *Id*. at 18.

[183] *Id*. at 17-18; Plaskolite's Reply at 10-11.

[184] Receiver's Opposition at 24.

1.  **Cobblestone, the government, and the purchasers of plastic lenses qualify as creditors under the Voidable Transfer Statute**

The Receiver's first claim is brought under Utah Code. § 25-6-202(1)(a), Utah's Voidable

Transfer Statute. This statute states, in relevant part:

> A transfer made or obligation incurred by a *debtor* is voidable as to a *creditor*, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: (a) with actual intent to hinder, delay, or defraud *any creditor* of the debtor[.][185]

A "creditor" is defined as "a person [or entity] that has a claim."[186] Additionally, a "debtor" is

defined as "a person [or entity] that is liable on a claim."[187] Plaskolite's arguments that

Cobblestone did not have any creditors fail because: (1) the government and the customers of the

plastic discs are "creditors" under Utah Code § 25-6-202(1)(a); and (2) Cobblestone, as an "evil

zombie" under its officers' "spell," was injured by the CEC Defendants' fraudulent scheme and

is a creditor under Utah Code § 25-6-202(1)(a).[188] Cobblestone is also a "debtor" under Utah

Code § 25-6-202(1)(a) because of its transaction with Plaskolite.[189]

The Tenth Circuit's opinion in *Klein v. Cornelius* establishes that a business entity abused

by a fraudulent scheme, such as Cobblestone, qualifies as a defrauded creditor that can sue under

Utah Code § 25-6-202(1)(a).[190] In *Cornelius*, Winsome Investment Trust ("Winsome") was an

investment pool of investors; Winsome's founder operated it as a Ponzi scheme; and the

---

[185] Utah Code Ann. § 25-6-202(1)(a) (2017) (formerly Utah Code Ann. § 25-6-5(1)(a)) (emphasis added).

[186] *Id*. § 25-6-102(4).

[187] *Id*. § 25-6-102(6).

[188] *Klein v. Cornelius*, 786 F.3d 1310, 1317 (10th Cir. 2015) (citing *Scholes v. Lehmann,* 56 F.3d 750, 753 (7th Cir.1995)).

[189] *Id*. at 1321.

[190] In *Cornelius*, the Tenth Circuit analyzed an earlier version of UVTA, which was then called the Uniform Fraudulent Transfer Act ("UFTA"). There were no material changes between the UFTA and the UVTA. Specifically, the only changes between the two statutes appear to be: (1) changing two male pronouns in Subsection (1)(b)(ii) to gender neutral nouns; (2) renumbering the statute; and (3) specifying that a creditor making a claim for relief under Subsection (1) has the burden of proving the elements of the claim for relief.

defendant law firm argued that Winsome's receiver did not have standing to bring a claim under UFTA on behalf of Winsome.[191] The Tenth Circuit disagreed and concluded that: (1) receivers may only sue to redress injuries to the entity in receivership and not directly on behalf of the entity's creditors; (2) the receivership entity, Winsome, qualified as a defrauded creditor under UFTA; and (3) the receivership entity, Winsome, could sue under UFTA.[192] Similar to Winsome, Cobblestone qualifies as a creditor because it was defrauded of its funds by the CEC Defendants, and particularly Johnson and its officers.

Additionally, in *Klein v. Roe*, the Tenth Circuit reiterated that: (1) a business entity "abused by a fraudulent scheme qualifies as a defrauded creditor" under UVTA; and (2) "the receiver of such defrauded entities has standing to recover fraudulent transfers under the UVTA."[193] Plaskolite's arguments that Cobblestone did not have any creditors and that no creditor was damaged from the transaction with Plaskolite fail because CEC Defendants' customers, the government, and Cobblestone are creditors. A reasonable factfinder could conclude that these entities, as creditors, were damaged by Cobblestone's transaction with Plaskolite. The Receiver is authorized to seek this recovery. And Plaskolite is not entitled to summary judgment on the Receiver's first claim under this argument.

The Tenth Circuit's opinion in *Cornelius* also establishes that Cobblestone is a debtor under Utah Code § 25-6-202(1)(a).[194] In *Cornelius*, the receiver represented the receivership entity, Winsome, that operated as a Ponzi scheme before the receivership was established. The receiver sued a law firm that represented the fraudster's friend in a criminal proceeding in New

---

[191] *Cornelius*, 786 F.3d at 1316.

[192] *Id.* at 1316-17.

[193] *Klein v. Roe*, 76 F.4th 1020, 1029 (10th Cir. 2023) (citing Utah Code Ann. § 25-6-202 (2017)).

[194] *Cornelius*, 786 F.3d at 1321.

Hampshire. Winsome paid the attorney's fees for the fraudster's friend even though the friend was not connected to Winsome, and the law firm did not provide any services to Winsome directly. The Tenth Circuit concluded that Winsome, *as a debtor*, did not receive reasonably equivalent value from these payments and, therefore, the law firm was liable under the UFTA for the payments it received from Winsome.[195] Therefore, a receivership entity, such as Cobblestone, may be a debtor and creditor under UVTA.

### 2. Disputed material facts remain on the Receiver's Claim under Utah Code § 25-6-202(1)(a)

Plaskolite argues it is entitled to summary judgment on the Receiver's first claim because the Receiver does not allege facts to support the allegation that the transfers to Plaskolite were made with the intent to hinder, delay, or defraud, as required by Utah Code § 25-6-202(1)(a). This statute, in relevant part, states:

> A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
> (a) with *actual intent* to hinder, delay, or defraud any creditor of the debtor[.][196]

The Court *may* use the eleven badges of fraud in Utah Code § 25-6-202(2) to determine "actual intent to hinder, delay, or defraud any creditor" under Utah Code § 25-6-202(1)(a). The badges of fraud are not an exclusive list. Utah Code § 25-6-202(2) states, in relevant part:

> To determine "actual intent" under Subsection (1)(a), consideration may be given, among other factors, to whether: (a) the transfer or obligation was to an insider; (b) the debtor retained possession or control of the property transferred after the transfer; (c) the transfer or obligation was disclosed or concealed; (d) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (e) the transfer was of substantially all the debtor's assets; (f) the debtor absconded; (g) the debtor removed or concealed assets; (h) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (i) the debtor was

---

[195] *Id.*

[196] Utah Code Ann. § 25-6-202(1)(a) (2017) (emphasis added).

insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (j) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (k) the debtor transferred the essential assets of the business to a lienor that transferred the assets to an insider of the debtor.[197]

Plaskolite argues it is entitled to summary judgment on the Receiver's first claim because the evidence in the record fails to show that any of these eleven factors were present.[198] In response, the Receiver argues: (1) the CEC determined that the Receivership Entities engaged in fraud; and (2) several of the badges of fraud are present and establish that the Receivership Entities possessed the intent to defraud their creditors.[199]

### i. The CEC determined that the CEC Defendants, Receivership Entities, and officers of Cobblestone engaged in fraud

The Receiver argues the officers of Cobblestone and the Receivership Entities knew the business was illegitimate, and the only possible inference is that the Receivership Entities made each transfer to Plaskolite with the actual intent to hinder, delay, or defraud a creditor.[200] The Receiver reasons that the solar lenses purchased from Plaskolite were the primary component of the CEC Defendants' tax fraud, and the CEC determined that the CEC Defendants and Receivership Entities knew or had reason to know that their statements regarding the solar lenses and tax benefits were false or fraudulent.[201] The Receiver also notes that the CEC Freeze Order concluded:

> [The] whole purpose of . . . the Receivership Entities . . . was to perpetuate a fraud to enable funding for Neldon Johnson. The same is true for other entities Johnson created, controls, and owns . . . . Johnson has commingled funds between these

---

[197] *Id*. § 25-6-202(2)(a)-(k) (2017).

[198] Plaskolite's Motion at 19-22.

[199] Receiver's Opposition at 27-31.

[200] *Id*. at 28.

[201] *Id*.

entities, used their accounts to pay personal expenses, and transferred Receivership Property to and through them in an attempt to avoid creditors.[202]

Additionally, the Receiver notes the CEC Freeze Order found that the creditors of the Receivership Entities, including the United States Treasury and customers who purchased the solar lenses, were harmed by the conduct of the CEC Defendants.[203] Judicial notice of the CEC is appropriate and is taken. The Receivership Entities and Johnson engaged in fraud by selling plastic lenses under materially false representations that the lenses created marketable electricity. Plaskolite is not entitled to summary judgment on the ground that the Receiver did not establish the transaction was made with intent to defraud because: (1) the plastic lenses were a central part of the fraud, and (2) a reasonable factfinder could conclude the transaction between Plaskolite and Cobblestone was made by the CEC Defendants and Receivership Entities with the intent to defraud creditors.

### ii. A reasonable factfinder could conclude the Receivership Entities made the transfer with Plaskolite with the intent to defraud creditors

Plaskolite argues that it is entitled to summary judgment on the Receiver's first claim because Cobblestone did not possess the intent to defraud creditors since none of the badges of fraud in Utah Code § 25-6-202(2) were present.[204] Plaskolite reasons: (1) the transactions were not concealed since they were documented in the customary manner;[205] (2) Cobblestone had not

---

[202] *Id.* (citing Freeze Order at 15-16).

[203] *Id.* at 28-29 (citing Freeze Order at 15-16).

[204] Plaskolite's Motion at 20 (citing Utah Code Ann. § 25-6-202(2) (a)-(k)).

[205] *Id.* at 20 (citing Klein Dep. at 44:10-18, 62:8-12); Utah Code Ann. § 25-6-202(2)(c).

been sued or threatened with suit by any creditor at the time of transaction with Plaskolite;[206] and (3) the Receiver did not identify assets of Cobblestone that it could not locate.[207]

The Receiver argues several of the badges of fraud are present in this case and establish Cobblestone's intent to defraud creditors through the purchase of plastic lenses from Plaskolite and sale of the plastic lenses to customers.[208] Specifically, the Receiver argues: (1) the CEC Defendants were sued by the Department of Justice in November 2015, and the transfers were made to Plaskolite were made on May 2, 2018;[209] (2) Johnson used Cobblestone instead of IAS to complete the purchase of the solar lenses after Plaskolite was initially hesitant to do business with IAS;[210] (3) the Receivership Entities comingled funds, removed assets, and concealed assets;[211] and (4) Cobblestone, as the debtor, transferred substantially all of its assets to Glenda Johnson on June 22, 2018, which was the date the court in the CEC issued its findings that the CEC Defendants had engaged in a "massive fraud."[212]

The Receiver has presented sufficient evidence demonstrating that several badges of fraud were present to enable a reasonable factfinder could conclude the CEC Defendants, Cobblestone, and the other Receivership Entities intended to defraud creditors by purchasing the plastic lenses from Plaskolite. Plaskolite is not entitled to summary judgment on the Receiver's first claim.

---

[206] Plaskolite's Motion at 20 (citing Klein Dep. at 107:5-8); Utah Code Ann. § 25-6-202(2)(d)).

[207] Plaskolite's Motion at 20 (citing Klein Dep. at 107:9-13); Utah Code Ann. § 25-6-202(2)(g)).

[208] Receiver's Opposition at 30 (citing Freeze Order at 15-16).

[209] Id. (citing Freeze Order at 16; Utah Code Ann. § 25-6-202(2)(d).

[210] Receiver's Opposition at 30 (citing Freeze Order at 15-16); Utah Code Ann. § 25-6-202(2)(c).

[211] Receiver's Opposition at 30-31 (citing Affiliates Order at 5); Utah Code Ann. § 25-6-202(2)(g).

[212] Receiver's Opposition at 31 (citing Turnover Order at 25-26); Utah Code Ann. § 25-6-202(2)(g).

### C.     Fourth Claim: The Receiver's Unjust Enrichment Claim Survives

The Receiver's fourth claim alleges that Plaskolite has been unjustly enriched. The Receiver alleges that the funds received by Plaskolite were "property of Receivership Entities and were by Receivership Entities in furtherance of the fraud scheme;"[213] benefitted Plaskolite;[214] and that "[a]llowing Plaskolite to retain the [t]ransfers would unjustly enrich it and would be inequitable"[215] and would damage the receivership estate.[216]

A claim for unjust enrichment requires: "(1) a benefit conferred on one person by another, (2) the conferee must appreciate or have knowledge of the benefit, and (3) there must be the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment for its value."[217] Plaskolite attacks the Receiver's unjust enrichment claim with two arguments (1) the Receiver cannot plead an unjust enrichment claim in the alternative when a remedy at law is also pending; and (2) the third element of an unjust enrichment claim is not present.[218]

#### 1.  The Receiver may pursue an equitable unjust enrichment claim in the alternative to his voidable transfer claim

Plaskolite argues the Receiver may not pursue an equitable claim because he has available claims under the UVTA.[219] In response, the Receiver argues that Utah recognizes unjust enrichment may be pleaded in the alternative even when a remedy at law exists.[220] The

---

[213] Amended Complaint ¶ 48.

[214] *Id.* ¶¶ 49-50.

[215] *Id.* ¶ 51.

[216] *Id.* ¶ 52.

[217] *Roberts v. C.R. England, Inc.*, 318 F.R.D. 457, 509 (D. Utah 2017) (citing *Desert Miriah, Inc. v. B & L Auto, Inc.*, 12 P.3d 580, 582 (Utah 2000)) (internal quotation marks omitted).

[218] Plaskolite's Motion at 24-25; Plaskolite's Reply at 16-17.

[219] Plaskolite's Motion at 24

[220] Receiver's Opposition at 31.

Receiver admits, however, that "[t]he unjust enrichment claim should be dismissed as moot when the Receiver prevails on his first claim for relief" under the UVTA.[221] The Receiver reasons that two District of Utah cases, *TLS Group, S.A. v. NuCloud Global Inc.*[222] and *Johnson v. Blendtec*,[223] hold that his equitable claim for unjust enrichment can be pleaded in the alternative to his claim for a voidable transfer.

In *TLS Group.*, the defendant moved to dismiss on the grounds that the plaintiff's unjust-enrichment claim was precluded by the complaint's breach of contract claims.[224] The district court disagreed, concluding that "the fact that a contract claim would preclude recovery under an equity claim does not foreclose a party's ability to plead them in the alternative."[225] *TLS Group* clearly recognizes that pleading in the alternative is permissible.

Similarly, in *Johnson*, Blendtec argued that Johnson's unjust enrichment claim should be dismissed because she did not expressly plead that a remedy of law was unavailable to her.[226] The district court disagreed and concluded that, at the motion to dismiss stage, the defendant's argument failed because "the absence of an adequate remedy at law is *not* an element of the *prima facie* case for unjust enrichment under the law of . . . Utah."[227] Johnson relied on *In re Processed Egg Prods. Antitrust Litig.*,[228] which allowed a party to allege legal claims and an unjust enrichment claim:

---

[221] *Id*. at 31, n.131.

[222] No. 2:15-CV-00533-TC, 2016 WL 1562910 (D. Utah Apr. 18, 2016).

[223] 500 F. Supp. 3d 1271 (D. Utah 2020).

[224] *TLS Grp., S.A.*, 2016 WL 1562910, *2 (citing *Ashby v. Ashby*, 227 P.3d 246, 251 (Utah 2010)).

[225] *Id*.

[226] *Johnson*, 500 F. Supp. 3d at 1291.

[227] *Id. at* 1292.

[228] 851 F. Supp. 2d 867 (E.D. Pa. 2012).

> [T]hat a complaint alleges an unjust enrichment claim and also brings alternative claims for relief that might constitute adequate remedies at law is of no consequence under the pleading constraints of the Federal Rules of Civil Procedure. Rule 8 allows plaintiffs to plead claims in the alternative . . . .[229]

Plaskolite argues that *TLS Group* and *Johnson* are distinguishable because those cases dealt with motions to dismiss, whereas Plaskolite filed a motion for summary judgment.[230] Plaskolite also reasons that: (1) it is the availability of a legal claim that precludes an equitable claim; and (2) legal claims were available to the Receiver, but he failed to prove them.[231] To support its argument, Plaskolite cites *AGTC Inc. v. CoBon Energy LLC*[232] and *Five F, LLC v. Heritage Sav. Bank*.[233] But these cases do not support Plaskolite's position. Indeed, *AGTC Inc. v. CoBon Energy LLC* supports denying Plaskolite's Motion for Summary Judgment regarding the Receiver's unjust enrichment claim.

The Utah Court of Appeals decision in *Five F* does not support Plaskolite's argument that the Receiver's unjust enrichment claim must be dismissed at the summary judgment stage.[234] In *Five F*, the defendant's motion for summary judgment was denied, and Plaintiff's claims for breach of fiduciary duty, breach of contract, and unjust enrichment proceeded to trial.[235] On the fourth day of trial, the court granted defendant's motion for a directed verdict before the case was submitted to the jury.[236] The court found the parties had an enforceable contract—no one

---

[229] *Id.* at 914.

[230] Plaskolite's Reply at 17.

[231] *Id.*

[232] *AGTC Inc. v. CoBon Energy LLC,* 447 P.3d 123, 125 (Utah Ct. App. 2019).

[233] *Five F, LLC, v. Heritage Sav. Bank*, 81 P.3d 105 (Utah Ct. App. 2003).

[234] *Id.*

[235] *Five F, LLC*, 81 P.3d at 107. *Five F* does not explain which claims the defendant sought to be dismissed in the motion for summary judgment. The opinion states only that the motion for summary judgment was denied and the claims for breach of fiduciary duty, breach of contract, and unjust enrichment proceeded to trial. *Id.*

[236] *Id.*

disputed that—and that there was no breach. The court also directed a verdict against the unjust

enrichment claim. The Utah Court of Appeals held that "[t]he trial court was also correct in

directing a verdict in favor of [the defendant] on the unjust enrichment claim because . . . [t]here

was no dispute that [there] was an enforceable contract and the case had been tried as a contract

case."[237] Thus, the unjust enrichment claim in *Five F* was not dismissed at the summary

judgment stage. It was dismissed only after the fourth day of trial when the trial court determined

that the parties had a binding contract. Therefore, the alternative claim for relief was no longer

needed.

The Utah Court of Appeals decision in *AGTC Inc.* supports denial of Plaskolite's Motion

for Summary Judgment regarding the Receiver's unjust enrichment claim.[238] The defendant,

CoBon, sought summary judgment on AGTC's unjust enrichment claim. The plaintiff, AGTC,

argued that the unjust enrichment claim should not be dismissed because defendant CoBon also

made arguments that "go to the validity, enforceability and scope of the [parties' contract]."[239]

The trial court ruled that the parties had a valid contract that was negotiated and signed by both

parties. Therefore, the trial court concluded the plaintiff could not maintain a cause of action for

unjust enrichment and dismissed the unjust-enrichment claim at summary judgment.[240] The Utah

Court of Appeals reversed, making a distinction between the admitted *existence* of a contract and

the *enforceability* of a contract. "The fact that the parties acknowledged and agreed that a

contract existed between them does not necessarily lead to the conclusion that it was an

enforceable contract that effectively governed their rights and obligations with respect to the

---

[237] *Id.* at 109.

[238] *AGTC Inc.*, 447 P.3d at 125.

[239] *Id.* at 129.

[240] *Id.* at 129-130.

subject matter of the case."[241] The Utah Court of Appeals also cautioned against premature dismissal of alternative claims: "a district court should not dismiss alternative equitable claims if the existence or applicability of a contract remain in dispute."[242]

Plaskolite's Motion for Summary Judgment is denied regarding the Receiver's unjust enrichment claim because the Receiver's voidable transfer claim has not been decided. The Receiver cannot and will not have a double recovery. But until facts are determined, the Receiver's alternative unjust enrichment claim cannot be dismissed. The District of Utah's decision in *TLS Group* and the Utah Court of Appeals decision in *AGTC Inc.* establish that a plaintiff can plead an unjust enrichment claim in the alternative and maintain that claim past the summary judgment stage and until a merits decision on the primary legal claim. Therefore, Plaskolite's Motion for Summary Judgment is denied on this ground.

### 2. A reasonable factfinder could conclude the transfer of funds from Cobblestone to Plaskolite was inequitable, and that Plaskolite's retention of the funds is unjust

Plaskolite argues the Receiver's unjust enrichment claim should be dismissed because it cannot be supported by facts. Plaskolite argues there was nothing inequitable about the transaction because: (1) the transaction the parties agreed to had commercially reasonable terms; (2) the transaction was appropriately documented; and (3) the price was negotiated at arm's length. In response, the Receiver argues that the undisputed material facts preclude summary judgment because Plaskolite knew or had reason to know that Cobblestone was using the plastic lenses to perpetuate a massive fraud.[243]

---

[241] *Id.* at 130.

[242] *Id.*

[243] Plaskolite's Motion at 28-29; Plaskolite's Reply at 18-19.

On this motion, the Receiver does not contest that the transaction was commercially reasonable and appropriately documented. And Plaskolite does not challenge the first two elements of the unjust enrichment claim, that Plaskolite received a benefit from Cobblestone and knew of the benefit. Rather, on this motion, the parties only disagree as to whether the third element of the unjust enrichment claim can be met. This element is whether "the acceptance or retention by [Plaskolite] of the benefit under such circumstances as to make it inequitable for [Plaskolite] to retain the benefit[.]"[244]

Plaskolite argues "[t]here is no supportable basis for finding that there is anything 'unjust' about a supplier of goods being paid fair value for the goods it supplies."[245] But the Receiver argues, citing only fraudulent transfer cases, that Plaskolite did not engage in the transaction with Cobblestone in good faith.[246] The Receiver references many facts in its Opposition suggesting possible bases for a finding that it would be inequitable for Plaskolite to retain the funds transferred by Cobblestone, mostly arising from the notice (actual or constructive) of the fraud the lenses facilitated.[247] But the cases on which the Receiver relies are fraudulent transfer cases. Neither party presented case law or other legal authority regarding the third element of an unjust enrichment claim describing the circumstances in which it is "inequitable" for a party to retain a conferred benefit. And such determination is highly factual.

In this vacuum of legal authority, and in opposing Plaskolite's argument that this was a garden-variety commercial transaction, the Receiver has presented sufficient undisputed facts and evidence from which a reasonable factfinder could conclude that it would be inequitable for

---

[244] *Roberts*, 318 F.R.D. at 509 (citing *Desert Miriah, Inc.*, 12 P.3d at 582) (internal quotation marks omitted).

[245] Plaskolite's Motion at 25.

[246] Receiver's Opposition at 3, 26, 32.

[247] Receiver's Opposition at 32-34.

Plaskolite to retain the benefits it obtained from transacting with Cobblestone. These facts and evidence include:

(1) On July 15, 2015, a Department of Justice attorney contacted Plaskolite to inquire about one of the Receivership Entities, IAS;[248]

(2) On November 13, 2015, the United States Department of Justice filed a lawsuit against the CEC Defendants that accused them of selling solar lenses to perpetuate a massive tax fraud;[249]

(3) On January 13, 2017, Plaskolite received a subpoena from the Department of Justice for the Civil Enforcement Case, and Plaskolite's outside counsel spoke with a Department of Justice attorney;[250]

(4) On February 26, 2018, Randale Johnson informed Plaskolite's salesperson, Kupchick, that the invoice for the transaction could be sent to Cobblestone instead of IAS if that would be easier for Plaskolite;[251]

(5) Later, on February 26, 2018, Kupchick conducted research on IAS and forwarded a news release on IAS to his email account that stated the government alleged the CEC Defendants engaged in a multi-level marketing scheme to enrich themselves and to get customers to buy their lenses;[252] and

(6) Plaskolite understood the lenses mentioned in the news release were the products they sold to IAS.[253]

Therefore, because of the existence of genuine issues of material fact regarding the third element of the Receiver's unjust enrichment claim, Plaskolite's Motion for Summary Judgment is denied regarding that claim.

---

[248] Receiver's Opposition at 12, ¶ 30 (citing Plaskolite's 30(b)(6) Deposition, Exhibit L2 at 65:13-69:7, docket no. 52-7, filed December 10, 2021).

[249] Receiver's Opposition at 30.

[250] Receiver's Opposition at 13, ¶ 32 (citing Plaskolite's Responses for Admission, Interrogatories, and Requests for Production of Documents, Exhibit  M at 2, docket no. 52-12, filed December 10, 2021).

[251] Receiver's Opposition at 13-14, ¶ 38 (citing Plaskolite's 30(b)(6) Deposition, Exhibit L2 at 59:12-25, docket no. 52-7, filed December 10, 2021).

[252] Receiver's Opposition at 14, ¶ 42 (citing Klein Dep. at 42:3-43:18).

[253] Receiver's Opposition at 15, ¶ 43 (citing Plaskolite's 30(b)(6) Deposition, Exhibit L4 at 133-34:13-13 docket no. 52-9, filed December 10, 2021).

## VI.    ORDER

### A.   Order on Motion for Summary Judgment

IT IS HEREBY ORDERED that Plaskolite's Motion for Summary Judgment[254] is

DENIED. The Voidable Transfer claim and the Unjust Enrichment claim remain to be decided.

### B.   Order Establishing Facts

IT IS FURTHER ORDERED under Fed. R. Civ. P. 56(g) that the Undisputed Material

Facts enumerated above in the paragraphs ¶¶ 1-73 which were established in the CEC Findings

and by this process of summary judgment briefing, shall be treated as established in this case.

Signed June 7, 2024.

BY THE COURT

David Nuffer
United States District Judge

---

[254] Docket no. 39, filed October 29, 2021.