THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| R. WAYNE KLEIN, as Receiver,<br><br>    Plaintiff,<br><br>v.<br><br>PLASKOLITE, LLC,<br><br>    Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:19-cv-00832-DN-PK<br>District Judge David Nuffer<br>Magistrate Judge Paul Kohler |

## I.  INTRODUCTION

This Memorandum Decision and Order follows entry of a 'mirror' Memorandum Decision and Order entered three months ago.[1] The earlier Order deals with very similar issues and was based on very similar memoranda submitted by the parties. But the 84 Memorandum Decision resolved a motion[2] filed *against* the Plaintiff Receiver, while this Memorandum Decision and Order resolves a motion filed *by* the Receiver.

The Receiver filed his Motion for Summary Judgment on December 10, 2021.[3] Plaskolite filed a Memorandum in Opposition[4] on January 14, 2022, and the Receiver filed a Reply on May 23, 2022.[5]

---

[1] Memorandum Decision and Order Denying [39] Defendant's Motion for Summary Judgment ("84 Memorandum Decision"), docket no. 84, filed June 7, 2024.

[2] Plaskolite's Motion for Summary Judgment ("Plaskolite's 39 Motion") at 1-29, docket no. 39, filed October 29, 2021.

[3] Receiver's Motion for Partial Summary Judgment ("Receiver's Motion"), docket no. 51, filed December 10, 2021.

[4] Plaskolite's Memorandum in Opposition to Receiver's Motion for Partial Summary Judgment ("Plaskolite's Opposition"), docket no. 63, filed January 14, 2022.

[5] Receiver's Reply to Response to Motion ("Receiver's Reply"), docket no. 73, filed May 23, 2022.

This action is one of many ancillary actions filed by the receiver of assets owned by entities involved in tax fraud. The underlying tax fraud case, *USA v. RaPower-3, LLC, et al.*,[6] ("Civil Enforcement Case" or "CEC") went to trial in 2018. Defendants in the CEC ("CEC Defendants") included RaPower-3, LLC; International Automated Systems, Inc. (IAS); LTB1, LLC; Neldon Johnson (the sole decision-maker for the preceding entities); and R. Gregory Shepard (who assisted Johnson in marketing and sales for the entities).

A 12-day bench trial was held April 2 through June 22, 2018. The result was an Initial Order and Injunction after trial;[7] an order freezing assets;[8] an extensive set of findings and conclusions (CEC Main Findings");[9] a judgment;[10] appointment of a receiver for the CEC Defendants;[11] an order including another 13 Affiliated Entities in the receivership as Receivership Entities;[12] an order finding principals Neldon Johnson, Glenda Johnson, LaGrand Johnson, and Randale Johnson in contempt and imposing sanctions;[13] an order effecting

---

[6] District of Utah Case No. 2:15-cv-828.

[7] Docket no. 413, 2:15-cv-828, filed June 22, 2018.

[8] Memorandum Decision and Order Freezing Assets and to Appoint a Receiver, docket no. 444, 2:15-cv-828, filed August 22, 2018, attached to [Receiver's] Opposition to Motion for Summary Judgment of Defendant Plaskolite, LLC ("Opposition"), as Exhibit K, docket no. 52-5, December 10, 2021.

[9] Findings of Fact and Conclusions of Law, docket no 467, 2:15-cv-828, filed October 4. 2018, attached as Exhibit G to Plaskolite's 39 Motion, docket no. 39-8, filed October 29, 2021.

[10] Judgment in a Civil Case, docket no 468, 2:15-cv-828, filed October 4. 2018; Amended and Restated Judgment in a Civil Case, docket no. 507, 2:15-cv-828, filed November 13, 2018.

[11] Corrected Receivership Order, docket no. 491, 2:15-cv-828, filed November 1, 2018, attached to Receiver's 52 Opposition at Exhibit O, docket no. 52-14, filed December 10, 2021.

[12] Memorandum Decision and Order on Receiver's Motion to Include Affiliates and Subsidiaries in Receivership ("Affiliates Order"), docket no. 636, 2:15-cv-828, filed May 3, 2019, attached to Receiver's 52 Opposition as Exhibit J, docket no. 52-4, filed December 10, 2021. The Affiliated Entities include Solco I, LLC; XSun Energy, LLC; Cobblestone Centre, LLC; LTB O&M, LLC; U-Check, Inc.; DCL16BLT, Inc.; DCL-16A, Inc; N.P. Johnson Family Limited Partnership ("NPJFLP"); Solstice Enterprises, Inc.; Black Night Enterprises, Inc.; and Starlight Holdings, Inc.; Shepard Energy; and Shepard Global, Inc.

[13] Civil Contempt Order Re: Neldon Johnson, Glenda Johnson, LaGrand Johnson, and Randale Johnson, docket no. 947, 2:15-cv-828, filed July 6, 2020, attached as Exhibit R to Receiver's 52 Opposition, docket no. 52-17, filed December 10, 2021.

involuntary turnover of certain properties and records to the Receiver;[14] and over 80 ancillary

actions seeking recovery of assets. All these orders in the CEC ("CEC Orders") contain

additional litigated findings, which together with the CEC Main Findings constitute the CEC

Findings.

The primary purposes of the receivership are to safeguard receivership assets, administer

receivership property, and achieve a final and equitable distribution of receivership assets. The

Receiver's work seeks to undo the effects of the fraud perpetrated by the Receivership Entities

and their principals and restore property to those who were defrauded, including customers who

paid nearly 33 million dollars.

A major victim of the fraud was the United States Treasury. The Receivership

"Defendants' conduct wrongfully deprived the U.S. Treasury of the taxes Defendants' customers

lawfully owed."[15] "A reasonable approximation of the harm to the Treasury, from depreciation

and tax credits claimed from a sample [of tax returns for 5 of the ten years of operation] is at

least $14,207,517.499."[16]

This case is, however, different from most ancillary proceedings arising from the CEC

which usually seek to recover funds from insiders or commissions from sellers of unregistered

securities. "There are no allegations that Plaskolite profited from the receivership entities' fraud

with commissions or was involved in perpetuating any fraudulent tax scheme involving solar

panels."[17] Plaskolite was a vendor that sold goods to two Receivership Entities, which were

---

[14] Memorandum Decision and Order Granting Turnover Motion; Denying Motion to Strike; Overruling Objection to Authentication of Exhibits; and Overruling Objection to Rejection of Reputed Contract, docket No. 1007, 2:15-cv-828 filed September 15, 2020, attached as Exhibit Q to Receiver's 52 Opposition, docket no. 52-16.

[15] CEC Main Findings, ¶ 427 at 84.

[16] CEC Main Findings, ¶ 422 at 84.

[17] Plaskolite's 39 Motion at 1.

central to the tax fraud. During the on-going trial, Plaskolite sold goods to an Affiliated Entity that later became a Receivership Entity. Plaskolite received $515,362.64 in May 2018. The Receiver alleges the payment to Plaskolite is a voidable transfer or, in the alternative, subject to a claim for unjust enrichment.

## II.   CONTENTS

I.    INTRODUCTION ................................................................................................ 1
II.   CONTENTS ....................................................................................................... 4
III.  ISSUES ON THIS MOTION............................................................................... 5
IV.   UNDISPUTED MATERIAL FACTS ................................................................. 5
      Fraudulent Scheme............................................................................................. 7
      The Civil Enforcement Case against the CEC Defendants................................. 9
      Plaskolite's Transactions with Receivership Entities ...................................... 12
      Positions and Evidence in this Litigation......................................................... 17
      Plaskolite and Cobblestone in the Civil Enforcement Action .......................... 20
      Evidence about Cobblestone ............................................................................ 21
V.    STANDARD OF REVIEW ............................................................................... 21
VI.   DISCUSSION ................................................................................................... 22
      A.    The Civil Enforcement Case Findings May Be Used in this Case ...................... 22
            1.    Judicial Notice May Be Taken of Findings in the Civil Enforcement
                  Action.............................................................................................. 23
            2.    The Dangers of Use of Judicial Opinions from Other Cases Are Not
                  Present Here .................................................................................... 24
            3.    Receivership and UVTA Proceedings Have Equitable Natures. .............. 26
            4.    Issue Preclusion, Collateral Estoppel, and Res Judicata Are Inapplicable 27
            5.    Plaskolite Is Not Denied Due Process ................................................. 28
            6.    There Is No Disconnect Between the Civil Enforcement Action and This
                  Case................................................................................................. 30
            7.    Plaskolite's Hearsay, Personal Knowledge, "Commentary," and
                  Authentication Objections are Overruled ........................................... 31
            8.    Facts Found in the Civil Enforcement Action Do Not Defeat the
                  Receiver's Claim ............................................................................. 36
      B. The Receiver is entitled to summary judgment on his voidable transfer claim .......... 39
            1.    Cobblestone, the government, and the customers of the plastic lenses
                  qualify as creditors under the Voidable Transfer Statute........................ 40
            2.    The government, the customers of the plastic lenses, and the Receivership
                  Entities were harmed by the transactions................................................. 42
            3.    The Receiver is entitled to summary judgment on the fraudulent transfer
                  claim based on the facts established in the CEC Action........................... 43

4.      The three badges of fraud that are present are a second independent ground that establish the Receiver is entitled to summary judgment for his fraudulent transfer claim ................................................................ 45

5.      The Good Faith Defense is not available to Plaskolite ............................ 47

C.      The Receiver is entitled to prejudgment interest ................................................. 49

VII.    ORDER ..................................................................................................................... 50

## III.    ISSUES ON THIS MOTION

The Receiver seeks summary judgment on the voidable transfer claim because: (1) the transfers were made by Cobblestone with the actual intent to defraud creditors; and (2) the transfers were not made in good faith. The Receiver asks that an order be entered requiring Plaskolite to return to the Receivership Estate $515,362.64.[18] The Receiver also seeks summary judgment on prejudgment interest for the alleged damages. This Receiver's Motion for Summary Judgment is granted.

## IV.    UNDISPUTED MATERIAL FACTS[19]

1.      Plaintiff R. Wayne Klein is the Receiver for several entities that were involved in a fraudulent tax scheme ("Receivership Entities").[20] The Receivership Entities were put under the Receiver's control after the CEC Corrected Receivership Order was entered.[21]

---

[18] Receiver's Motion at 3.

[19] The 84 Memorandum Decision, under Fed. R. Civ. P. 56(g), ordered that the Undisputed Material Facts it included in ¶¶ 1-73 are treated as established in this case. The 84 Memorandum Decision contains two factual paragraphs numbered 32. This order corrects the numbering, so this listing contains 74 numbered paragraphs.

This enumeration of Undisputed Material Facts is taken from the parties' briefs and attached exhibits and the Orders that the District of Utah entered for the fraudulent scheme involving the Receivership Entities. Those facts, or portions thereof, identified in the parties' briefing that do not appear in these Undisputed Material Facts are either disputed; not supported by cited evidence; not material; or are not facts, but rather, are characterization of facts or legal argument. Additionally, some of these Undisputed Material Facts may not be material to the disposition of the parties' motions, but are nevertheless included to give background and context to the issues raised in the motions. Plaskolite did not include any undisputed material facts in its Opposition to the Receiver's Motion, and Plaskolite stated that it was asserting the same undisputed material facts from Plaskolite's 39 Motion.

[20] Receiver's Motion at 8 ¶24; Plaskolite Opposition at 3. Plaskolite objected to this fact being asserted by the Receiver. Plaskolite's Opposition at 4. However, as specified in Section V.A.1. of the 84 Memorandum Decision this objection is overruled.

[21] Corrected Receivership Order, docket no. 491, 2:15-cv-828, filed November 1, 2018, attached to Receiver's 52 Opposition as Exhibit O, docket no. 52-14, filed December 10, 2021.

2.      Some of the Receivership Entities were defendants in the CEC ("CEC Defendants") while others were later put under the control of the Receiver ("Affiliated Entities"). Cobblestone is an Affiliated Entity and a Receivership Entity.[22]

3.      The Affiliated Entities which Neldon Johnson ("Johnson") created, controls, and owns were used by the CEC Defendants "to [perpetuate] a fraud to enable funding for Neldon Johnson."[23]

4.      "Johnson  . . . commingled funds between these entities, used their accounts to pay personal expenses, and transferred Receivership Property to and through them in an attempt to avoid creditors."[24] Each of the Affiliated Entities is a subsidiary or affiliated entity of [CEC] Defendants and has close associations with the Receivership Entities. In many cases, the Affiliated Entities and CEC Defendants have common officers, directors, members, and managers. Their corporate purposes are similar. And there have been numerous and substantial financial transactions between them.[25]

5.      "[T]he [CEC] Defendants and Affiliated Entities have engaged in transactions without objective economic justification or compliance with legal formalities, while concealing assets and withholding records from the Receiver."[26]

---

[22] *Id.*; Affiliates Order, docket no. 52-4, filed December 10, 2021.

[23] Receiver's Exhibit J, Affiliates Order at 4 ¶2.

[24] Receiver's Exhibit J, Affiliates Order at 4-5 ¶2.

[25] Receiver's Exhibit J, Affiliates Order at 5 ¶3.

[26] Receiver's Exhibit J, Affiliates Order at 5 ¶4.

### Fraudulent Scheme

6.       Johnson claimed to have invented solar energy technology, which involves solar lenses placed in arrays on towers.[27]

7.       To make money from this purported technology, Johnson sold a component of the technology: the solar lenses.[28]

8.       One of the CEC Defendants and Receivership Entities, RaPower-3, LLC, sold the lenses to hundreds of investors through a multi-level marketing model.[29]

9.       Johnson's entities retained the lenses and controlled what happened to them (if anything).[30]

10.       The Receivership Entities emphasized how little any customer would have to do with respect to "leasing out" their lenses: "[s]ince LTB[1] installs, operates and maintains your lenses for you, having your own solar business couldn't be simpler or easier."[31]

---

[27] Receiver's Motion at 3 ¶1. Plaskolite objects to this fact because it relies on the findings from the CEC. Plaskolite's Opposition at 2-3. However, as specified in Section V.A.1. of this order, in *Klein v. Shepherd*, another ancillary case, the Tenth Circuit held the district court appropriately took judicial notice of facts from the Civil Enforcement Case ("CEC") under Federal Rule of Evidence 201. Therefore, Plaskolite's objection is overruled, and this material fact is undisputed.

[28] Receiver's Motion at 3 ¶2 (citing Plaskolite's Exhibit G, CEC Findings at 6, ¶27, docket no. 39-8). Plaskolite objects to this fact because it relies on the findings from the CEC. Plaskolite's Opposition at 2-3. However, as specified in Section V.A.1. of this order, in *Klein v. Shepherd*, another ancillary case, the Tenth Circuit held the district court appropriately took judicial notice of facts from the Civil Enforcement Case ("CEC") under Federal Rule of Evidence 201. Therefore, Plaskolite's objection is overruled, and this material fact is undisputed.

[29] Receiver's Motion at 3 ¶3 (citing Plaskolite's Exhibit G, CEC Findings at 8-9, docket no. 39-8). Plaskolite objects to this fact because it relies on the findings from the CEC. Plaskolite's Opposition at 2-3. However, as specified in Section V.A.1. of this order, in *Klein v. Shepherd*, another ancillary case, the Tenth Circuit held the district court appropriately took judicial notice of facts from the Civil Enforcement Case ("CEC") under Federal Rule of Evidence 201. Therefore, Plaskolite's objection is overruled, and this material fact is undisputed.

[30] Receiver's Motion at 5 ¶11 (citing Plaskolite's Exhibit G, CEC Findings at 57 ¶292, docket no. 39-8). Plaskolite objects to this fact because it relies on the findings from the CEC. Plaskolite's Opposition at 2-3. However, as specified in Section V.A.1. of this order, in *Klein v. Shepherd*, another ancillary case, the Tenth Circuit held the district court appropriately took judicial notice of facts from the Civil Enforcement Case ("CEC") under Federal Rule of Evidence 201. Therefore, Plaskolite's objection is overruled, and this material fact is undisputed.

[31] Receiver's Motion at 5 ¶12 (citing Plaskolite's Exhibit G, CEC Findings at 64, docket no. 39-8). Plaskolite objects to this fact because it relies on the findings from the CEC. Plaskolite's Opposition at 2-3. However, as specified in Section V.A.1. of this order, in *Klein v. Shepherd*, another ancillary case, the Tenth Circuit held the

11.     The Receivership Entities knew that they sold solar lenses to individuals who generally work full-time jobs, like teachers, school administrators, coaches, and others. They knew, or had reason to know, that their customers do not have special expertise in the solar energy industry.[32]

12.     The Receivership Entities advertised substantial returns and tax benefits in exchange for only a down payment on the solar lenses:[33]



---

[32] Receiver's Motion at 5 ¶13 (citing Plaskolite's Exhibit G, CEC Findings at 64, docket no. 39-8). Plaskolite objects to this fact because it relies on the findings from the CEC. Plaskolite's Opposition at 2-3. However, as specified in Section V.A.1. of this order, in *Klein v. Shepherd*, another ancillary case, the Tenth Circuit held the district court appropriately took judicial notice of facts from the Civil Enforcement Case ("CEC") under Federal Rule of Evidence 201. Therefore, Plaskolite's objection is overruled, and this material fact is undisputed.

[33] Receiver's Motion at 5-6 ¶14 (citing Plaskolite's Exhibit G, CEC Findings at 57, docket no. 39-8). Plaskolite objects to this fact because it relies on the findings from the CEC. Plaskolite's Opposition at 2-3. However, as specified in Section V.A.1. of this order, in *Klein v. Shepherd*, another ancillary case, the Tenth Circuit held the district court appropriately took judicial notice of facts from the Civil Enforcement Case ("CEC") under Federal Rule of Evidence 201. Therefore, Plaskolite's objection is overruled, and this material fact is undisputed.

district court appropriately took judicial notice of facts from the Civil Enforcement Case ("CEC") under Federal Rule of Evidence 201. Therefore, Plaskolite's objection is overruled, and this material fact is undisputed.

### The Civil Enforcement Case against the CEC Defendants

13.     On November 23, 2015, the United States filed the Civil Enforcement Case against the CEC Defendants alleging that they were operating a fraudulent solar energy scheme.[34]

14.     The court in the CEC found: "For more than ten years, the [CEC Defendants] promoted an abusive tax scheme centered on purported solar energy technology featuring 'solar lenses' to customers across the United States. But the solar lenses were only the cover story for what the [CEC Defendants] were really selling: unlawful tax deductions and credits."[35]

15.     The CEC Defendants sold solar lenses emphasizing their purported tax benefits. Customers were told that they could "zero out" their federal income tax liability by buying enough solar lenses and claiming both a depreciation deduction and solar energy tax credit for the lenses.[36]

16.     The purported solar energy technology and solar lenses, however, did not work and could not generate marketable energy. Specifically, the court found that the "purported solar energy technology is not now, has never been, and never will be a commercial-grade solar

---

[34] Receiver's Motion at 6 ¶16; *see also United States v. RaPower-3, LLC, et al.*, Case No. 2:15-cv-00828, Complaint, Nov. 23, 2015 (D. Utah). Plaskolite objected to this fact on the grounds the Complaint from the CEC is inadmissible. Plaskolite's Opposition at 3. Plaskolite's objection is overruled, and this objection is erroneous. The Receiver did not assert any facts from the Complaint, but merely that a Complaint was filed on a certain day against certain entities.

[35] Receiver's Motion at 7 ¶17 (citing Receiver's Exhibit J, Affiliates Order at 4 ¶1, docket no. 52-4, filed December 10, 2021). Plaskolite objected to this fact being asserted in its motion papers on the grounds the court's CEC Orders were hearsay. Plaskolite's Opposition at 3. However, as specified in Section V.A.1 of this order, in *Klein v. Shepherd*, the Tenth Circuit held the district court appropriately took judicial notice of facts from the same Civil Enforcement Case under Federal Rule of Evidence 201. Therefore, Plaskolite's objection is overruled, and this material fact is undisputed.

[36] Receiver's Motion at 7 ¶18 (citing Plaskolite's Exhibit G, CEC Findings at 35 ¶203, docket no. 39-8, filed December 10, 2021). Plaskolite objected to this fact being asserted in its motion papers on the grounds the court's CEC Orders were hearsay. Plaskolite's Opposition at 3. However, as specified in Section V.A.1 of this order, in *Klein v. Shepherd*, the Tenth Circuit held the district court appropriately took judicial notice of facts from the same Civil Enforcement Case under Federal Rule of Evidence 201. Therefore, Plaskolite's objection is overruled, and this material fact is undisputed.

energy system that converts sunlight into electrical power or other useful energy" and "[t]he solar lenses do not, either on their own or in conjunction with other components, use solar energy to generate [marketable electricity]."[37]

17.    None of these solar lenses ever met the necessary elements to qualify for depreciation deductions or the solar energy tax credit. Indeed, "[h]undreds, if not thousands" of customer lenses were not even removed from the shipping pallets.[38]

18.    The evidence adduced at trial shows that Defendants organized the solar energy scheme; that the CEC Defendants made false or fraudulent statements about the tax benefits to be obtained from purchasing a solar lens; and that CEC Defendants knew or had reason to know that their statements were false or fraudulent pertaining to a material matter, namely the tax benefits of depreciation and solar energy tax credits.[39]

19.    Notwithstanding the fact the solar lenses and technology never worked, the Receivership Entities continued to sell solar lenses to customers emphasizing that customers would qualify for depreciation deductions and/or the solar energy tax credit. Between 45,205 and

---

[37] Receiver's Motion at 7 ¶19 (citing Plaskolite's Exhibit G CEC Findings at 49 ¶263, docket no. 39-8). Plaskolite objected to this fact being asserted in its motion papers on the grounds the court's CEC Orders were hearsay. Plaskolite's Opposition at 3. However, as specified in Section V.A.1 of this order, in *Klein v. Shepherd*, the Tenth Circuit held the district court appropriately took judicial notice of facts from the same Civil Enforcement Case under Federal Rule of Evidence 201. Therefore, Plaskolite's objection is overruled, and this material fact is undisputed.

[38] Receiver's Motion at 7 ¶20 (citing Plaskolite's Exhibit G, CEC Findings at 55-56, docket no. 39-8). Plaskolite objected to this fact being asserted in its motion papers on the grounds the court's CEC Orders were hearsay. Plaskolite's Opposition at 3. However, as specified in Section V.A.1 of this order, in *Klein v. Shepherd*, the Tenth Circuit held the district court appropriately took judicial notice of facts from the same Civil Enforcement Case under Federal Rule of Evidence 201. Therefore, Plaskolite's objection is overruled, and this material fact is undisputed.

[39] Receiver's Motion at 8 ¶21 (citing Receiver's Exhibit K, Freeze Order at 15-16, docket no. 52-5). Plaskolite objected to this fact being asserted in its motion papers on the grounds the court's CEC Orders were hearsay. Plaskolite's Opposition at 3. However, as specified in Section V.A.1 of this order, in *Klein v. Shepherd*, the Tenth Circuit held the district court appropriately took judicial notice of facts from the same Civil Enforcement Case under Federal Rule of Evidence 201. Therefore, Plaskolite's objection is overruled, and this material fact is undisputed.

49,415 solar lenses were sold to customers.[40]

20.     The Receivership Entities own transaction documents and testimony at trial in the Civil Enforcement Case showed that the gross receipts received by the Fraudulent Entities were at least $32,796,196 and possibly much more.[41]

21.     The court in the CEC enjoined the Receivership Entities from promoting their abusive solar energy scheme; ordered them to disgorge their gross receipts; and required them to turn over their assets and business operations to the Receiver.[42]

22.     The court in the CEC found that the "whole purpose of RaPower, IAS, and LBT1 . . . was to perpetuate a fraud to enable funding for Neldon Johnson. The same is true for other entities Johnson created, controls, and owns . . . . Johnson has commingled funds between these entities, used their accounts to pay personal expenses, and transferred Receivership Property to and through them in an attempt to avoid creditors."[43]

23.     "[T]he whole purpose of RaPower[] was to perpetrate a fraud to enable funding of

---

[40] Receiver's Motion at 8 ¶22 (citing Plaskolite's Exhibit G, CEC Findings at 14 ¶79, docket no. 39-8). Plaskolite objected to this fact being asserted in its motion papers on the grounds the court's CEC Orders were hearsay. Plaskolite's Opposition at 3. However, as specified in Section V.A.1 of this order, in *Klein v. Shepherd*, the Tenth Circuit held the district court appropriately took judicial notice of facts from the same Civil Enforcement Case under Federal Rule of Evidence 201. Therefore, Plaskolite's objection is overruled, and this material fact is undisputed.

[41] Receiver's Motion at 8 ¶23 (citing Plaskolite's Exhibit G, CEC Findings at 15 ¶¶81-86, docket no. 39-8). Plaskolite objected to this fact being asserted in its motion papers on the grounds the court's CEC Orders were hearsay. Plaskolite's Opposition at 3. However, as specified in Section V.A.1 of this order, in *Klein v. Shepherd*, the Tenth Circuit held the district court appropriately took judicial notice of facts from the same Civil Enforcement Case under Federal Rule of Evidence 201. Therefore, Plaskolite's objection is overruled, and this material fact is undisputed.

[42] Receiver's Motion at 8 ¶24 (citing Receiver's Exhibit J, Affiliates Order at 4 ¶1, docket no. 52-4). Plaskolite objected to this fact being asserted in its motion papers on the grounds the court's CEC Orders were hearsay. Plaskolite's Opposition at 3. Plaskolite objected to this fact being asserted in its motion papers on the grounds the court's CEC Orders were hearsay. Plaskolite's Response, at 3. However, as specified in Section V.A.1 of this order, in *Klein v. Shepherd*, the Tenth Circuit held the district court appropriately took judicial notice of facts from the same Civil Enforcement Case under Federal Rule of Evidence 201. Therefore, Plaskolite's objection is overruled, and this material fact is undisputed.

[43] Receiver's Motion at 8-9 ¶25 (citing Receiver's Exhibit J, Affiliates Order at 4 ¶2, docket no. 52-4). Plaskolite objected to this fact being asserted in its motion papers on the grounds the court's CEC Orders were hearsay. Plaskolite's Opposition at 3. Plaskolite objected to this fact being asserted in its motion papers on the grounds the

the unsubstantiated, irrational dream of Nel[d]on Johnson. The same is true for the other entities

Johnson established and used including IAS, SOLCO I, XSun Energy, Cobblestone, and the LTB

entities."[44]

24.     "[The Receivership Entities] have no legitimate business, [the Fraudulent

Entities'] solar energy scheme is an abusive tax scheme and not a legitimate business."[45]

25.     "[The Receivership Entities] do not have any revenue or income aside from the

sale of solar lenses."[46]

### Plaskolite's Transactions with Receivership Entities

26.     Plaskolite is in the business of manufacturing extruded sheet products made of

---

court's CEC Orders were hearsay. Plaskolite's Opposition at 3. However, as specified in Section V.A.1 of this order, in *Klein v. Shepherd*, the Tenth Circuit held the district court appropriately took judicial notice of facts from the same Civil Enforcement Case under Federal Rule of Evidence 201. Therefore, Plaskolite's objection is overruled, and this material fact is undisputed.

[44] Receiver's Motion at 9 ¶26 (citing Receiver's Exhibit J, Affiliates Order at 1-2 ¶1-4, docket no. 52-4). Plaskolite objected to this fact being asserted in its motion papers on the grounds the court's CEC Orders were hearsay. Plaskolite's Opposition at 3. Plaskolite objected to this fact being asserted in its motion papers on the grounds the court's CEC Orders were hearsay. Plaskolite's Opposition at 3. However, as specified in Section V.A.1 of this order, in *Klein v. Shepherd*, the Tenth Circuit held the district court appropriately took judicial notice of facts from the same Civil Enforcement Case under Federal Rule of Evidence 201. Therefore, Plaskolite's objection is overruled, and this material fact is undisputed.

[45] Receiver's Motion at 9 ¶27 (citing Receiver's Exhibit K, Freeze Order at 18, docket no. 52-5). Plaskolite objected to this fact being asserted in its motion papers on the grounds the court's CEC Orders were hearsay. Plaskolite's Opposition at 3. However, as specified in Section V.A.1 of this order, in *Klein v. Shepherd*, the Tenth Circuit held the district court appropriately took judicial notice of facts from the same Civil Enforcement Case under Federal Rule of Evidence 201. Therefore, Plaskolite's objection is overruled, and this material fact is undisputed.

[46] Receiver's Motion at 9 ¶28 (citing Receiver's Exhibit K, Freeze Order at 19, docket no. 52-5). Plaskolite objected to this fact being asserted in its motion papers on the grounds the court's CEC Orders were hearsay. Plaskolite's Opposition at 3. However, as specified in Section V.A.1 of this order, in *Klein v. Shepherd*, the Tenth Circuit held the district court appropriately took judicial notice of facts from the same Civil Enforcement Case under Federal Rule of Evidence 201. Therefore, Plaskolite's objection is overruled, and this material fact is undisputed.

various materials, primarily acrylic.[47]

27.     Relevant to this case, the process for manufacturing extruded sheet products that contain a pattern is, in summary, as follows:

> You have a very large extrusion line that has the roller with the pattern on it, and then another chrome roll for the other side. The plastic is melted at one end. It goes through the extruder. It goes through these two rolls where the one roll embosses the custom pattern onto the one surface, and then it comes down the line and it's cooled and then it's trimmed. And then parts are saved and put on a pallet.[48]

28.     Plaskolite and its predecessor sold solar lenses to IAS, a CEC Defendant and Receivership Entity, beginning in January 2009.[49]

29.     On July 15, 2015, John Kupchick, a salesperson for Plaskolite and IAS's primary contact at Plaskolite, received a call from Erin Healy Gallagher of the U.S. Department of Justice inquiring regarding Plaskolite's customer IAS. Plaskolite's outside counsel communicated with the Department of Justice attorney.[50]

30.     On January 13, 2017, Plaskolite received a subpoena in the Department of Justice's Civil Enforcement Case.[51]

31.     Plaskolite's outside counsel communicated with the Department of Justice attorney.[52] The Department of Justice attorney did not: (1) advise Plaskolite to not engage in the transaction; (2) advise Plaskolite to review the Complaint; or (3) indicate that the civil tax issue

---

[47] Plaskolite's Response at 4 (citing Plaskolite Motion at 3 ¶1). The Receiver did not dispute this fact. Receiver Reply at 6 (citing Receiver's 52 Opposition at 3-6).

[48] Plaskolite's 39 Motion at 3-4 ¶2 (citing Exhibit C: Plaskolite Dep. at 45:19-46:9). The Receiver did not dispute this fact. Receiver's Reply at 6 (citing Receiver's 52 Opposition at 3-6).

[49] Receiver's Motion at 9 ¶29. Plaskolite did not dispute this fact. Plaskolite's Opposition at 3.

[50] Receiver's Motion at 9 ¶30. Plaskolite did not dispute this fact. Plaskolite's Opposition at 3.

[51] Receiver's Motion at 10 ¶32. Plaskolite did not dispute this fact. Plaskolite's Opposition at 3.

[52] Receiver's Motion at 10 ¶35. Plaskolite does not dispute this fact, but argues it is materially incomplete because it omits certain material facts. Plaskolite Opposition at 3. Plaskolite's additional facts were added to this paragraph. Plaskolite Opposition at 3.

involved the promotion of tax fraud.[53] The Department of Justice asked Plaskolite for a copy of the invoice if the transaction was consummated.[54]

32.    On February 12, 2018, John Kupchick ("Kupchick") a salesperson from Plaskolite, was emailed by Randale Johnson who expressed interest in purchasing plastic products from Plaskolite so his companies could manufacture additional solar lenses.[55]

33.    Kupchick knew Randale Johnson from prior transactions in which IAS had purchased products from Plaskolite.[56]

34.    Randale Johnson expressed interest in purchasing a roll to be customized for the manufacture of extruded sheet products.[57]

35.    Kupchick sent Randale Johnson quotations for a roll and sheet products.[58]

36.    After Randale Johnson's inquiry, Plaskolite questioned internally whether it should pursue IAS's business in light of the lawsuit and Department of Justice's subpoena concerning IAS.[59]

---

[53] Plaskolite's Opposition at 3.

[54] Plaskolite's Opposition at 3.

[55] Receiver's Motion at 10 ¶33. Plaskolite's Opposition at 3.

[56] Plaskolite did not submit a statement of undisputed material facts for the Receiver's Motion, but instead referenced the undisputed material facts it filed in Plaskolite's 39 Motion. Plaskolite Opposition at 4. Therefore, many following paragraphs refer to Plaskolite's 39 Motion and the papers on that motion. This paragraph is drawn from Plaskolite's 39 Motion at 4, ¶4 (citing Exhibit D: Kupchick Dec. at ¶3). The Receiver did not dispute this fact. Opposition to Motion for Summary Judgment of Defendant Plaskolite, LLC, ("Receiver's 52 Opposition") at 3, docket no. 52, filed December 10, 2021.

[57] Plaskolite's 39 Motion at 4 ¶5. The Receiver did not dispute this fact. Receiver's 52 Opposition at 3-6.

[58] Plaskolite's 39 Motion at 4 ¶6 (citing Exhibit D: at ¶2, Kupchick Exhibit 1). The Receiver did not dispute this fact. Receiver's 52 Opposition at 3-6.

[59] Receiver's Motion at 10 ¶34. Plaskolite did not dispute this fact. Plaskolite's Opposition at 3.

37.     Randale Johnson advised Kupchick that the purchaser would be Cobblestone, which according to Mr. Johnson, had a licensing agreement with IAS.[60]

38.     Kupchick and Randale Johnson agreed on a price for the roll, $15,000.00 plus freight cost of $224.78.[61]

39.     Kupchick and Randale Johnson also agreed on a quantity and per-unit price for the lenses – 8,000 units at $63.44 per unit, for a total price of $507,520.00 – as well as other essential terms of the transaction including the dimensions of the products, and a 2% discount for payment in advance.[62]

40.     The transaction was documented in purchase orders issued by Cobblestone and pro forma invoices issued by Plaskolite for payment in advance.[63]

41.     On February 13, 2018, Kupchick spoke with Randale Johnson from IAS. Kupchick informed Randale Johnson that Plaskolite was contacted by the Department of Justice and that IAS's inquiry was under review by management.[64]

42.     On February 26, 2018, Kupchick asked IAS whether the IAS contact information was the same for the invoice. Randale Johnson indicated that the invoice should be sent to Cobblestone, instead of IAS. Randale Johnson stated Cobblestone had the licensing rights from

---

[60] Plaskolite's 39 Motion at 4 ¶7 (citing Exhibit D: Kupchick Dec. at ¶6, Kupchick Exhibit 3). The Receiver did not dispute this fact. Receiver's 52 Opposition at 3-6.

[61] Plaskolite's 39 Motion at 5 ¶8 (citing Exhibit D: Kupchick Dec. at ¶7). The Receiver did not dispute this fact. Receiver's 52 Opposition at 3-6.

[62] Plaskolite's 39 Motion at 5 ¶9 (citing Exhibit D: Kupchick Dec. at ¶ 8). The Receiver did not dispute this fact. Receiver's 52 Opposition, at 3-6.

[63] Plaskolite's 39 Motion at 5 ¶10 (citing Exhibit D: Kupchick Dec. at ¶7-9; Kupchick Exhibits 4-6). The Receiver did not dispute this fact. Receiver's 52 Opposition at 3-6.

[64] Receiver's Motion at 10 ¶37. Plaskolite does not dispute this fact, but argues it is materially incomplete because it omits certain material facts. Plaskolite's Opposition at 3-4. Plaskolite's additional facts were added to the following paragraph.

IAS, but if it would be easier for Plaskolite, that Cobblestone could purchase the products.[65] As

Kupchick recalled, Randale Johnson explained that the dispute with the DOJ would likely be

settled; that their system works and was proven by independent experts, and that IAS's customer

was not worried about the dispute.[66]

      43.     On February 26, 2018, Kupchick conducted research on IAS and forwarded a

news release on IAS to his email account. The news release disclosed the government's

complaint against IAS stated:

> [T]he [CEC D]efendants allegedly know, or have reason to know, about the falsity of
> their statements, including that the lenses and the facility do not and will not produce
> solar energy that could be collected and used for any purpose that Congress intended to
> encourage through tax credits and that their customers are not engaged in any legitimate
> trade or business related to the scheme.[67]

      44.     The news release also stated the government alleged the defendants engaged in a

multi-level marketing scheme to enrich themselves and get customers to buy lenses.[68]

      45.     Plaskolite understood that the lenses mentioned in the news release were the lens

products Plaskolite was selling to IAS.[69]

      46.     On April 30, 2018, Neldon Johnson signed the purchase order for the lenses and

---

[65] Receiver's Motion at 10 ¶38. Plaskolite does not dispute this fact, but argues it is materially incomplete because it omits certain material facts. Plaskolite's Opposition at 3-4. Plaskolite's additional facts were added to this paragraph.

[66] Plaskolite's Opposition at 3-4.

[67] Receiver's Motion at 11 ¶¶39, 41. Plaskolite disputes this fact on the grounds that the Receiver "mischaracterizes Mr. Kupchick's testimony and the subject of the 'press release.' " Plaskolite's Opposition at 4. Plaskolite's objection is vague, and Plaskolite does not explain why it believes the Receiver mischaracterized Mr. Kupchick's testimony. Therefore, Plaskolite's objection is overruled, and this material fact is undisputed.

[68] Receiver's Motion at 11 ¶42. Plaskolite disputes this fact on the grounds that the Receiver "mischaracterizes Mr. Kupchick's testimony and the subject of the 'press release.' " Plaskolite's Opposition at 4. Plaskolite's objection is vague, and Plaskolite does not explain why it believes the Receiver mischaracterized Mr. Kupchick's testimony. Therefore, Plaskolite's objection is overruled, and this material fact is undisputed.

[69] Receiver's Motion at 11 ¶43. Plaskolite disputes this fact on the grounds that the Receiver "mischaracterizes Mr. Kupchick's testimony and the subject of the 'press release.' " Plaskolite's Opposition at 4. Plaskolite's objection is vague, and Plaskolite does not offer an explanation on why it believes the Receiver mischaracterized Mr. Kupchick's testimony. Therefore, Plaskolite's objection is overruled, and this material fact is undisputed.

chrome roll as the president of Cobblestone.[70]

47.    On May 2, 2018, Cobblestone sent payment to Plaskolite for the product.[71] Plaskolite received and processed the payment May 14, 2018.

48.    On or about May 14, 2018, Plaskolite received from Cobblestone two payments in advance in the form of checks totaling $515,362.64.[72]

49.    After receipt of payment, Plaskolite shipped the roll to Cobblestone to be customized for the use of making the lenses.[73]

50.    In turn, Cobblestone had that roll customized and then returned it to Plaskolite; thereafter, Plaskolite manufactured 8,000 lenses and shipped them to Cobblestone.[74]

## Positions and Evidence in this Litigation

51.    The Receiver makes no allegations in the Complaint that Cobblestone overpaid for the goods it received from Plaskolite, or that these goods were otherwise deficient.

52.    The Receiver admits that the sale of goods by Plaskolite to Cobblestone was at a price negotiated at arm's-length:

> I don't question that the price that Cobblestone paid for the lenses and the rollers was negotiated at arm's length. And I have – and I have no reason to believe and we're not asserting that the – that Plaskolite charged a price higher than it would

---

[70] Receiver's Motion at 12 ¶45. Plaskolite did not dispute this fact. Plaskolite's Opposition at 4.

[71] Receiver's Motion at 12 ¶46. Plaskolite does not dispute this fact. Plaskolite's Opposition at 4.

[72] Plaskolite's 39 Motion at 5 ¶11, (citing Exhibit D: Kupchick Dec. at ¶10). The Receiver did not dispute this fact. Receiver's 52 Opposition at 3-6. Plaskolite Opposition at 4.

[73] Plaskolite's 39 Motion at 5 ¶12, (citing Exhibit D: Kupchick Dec. at ¶11). The Receiver did not dispute this fact. Receiver's 52 Opposition at 3-6. Plaskolite's Opposition at 4.

[74] Plaskolite's 39 Motion at 5 ¶13, (citing Exhibit D: Kupchick Dec. at ¶¶7, 8, 9, Kupchick Exhibits 4, 5, 6). The Receiver did not dispute this fact. Receiver's 52 Opposition at 3-6. The Receiver did not dispute this fact. Receiver's 52 Opposition at 3-6. Plaskolite's Opposition at 4.

have to a buyer who would have engaged in a legitimate business.[75]

53.     The Receiver has taken no steps whatsoever to value the Plaskolite goods either at the time of the Transfers or at any time thereafter.[76]

54.     In the depositions taken by or on behalf of the United States or the Receiver in the Civil Enforcement Case, no questions were asked about why in 2018 goods were purchased from Plaskolite.[77]

55.     The Receiver has disclosed no expert in this case, to offer an opinion on the value of the Plaskolite goods (or on any other issue).[78]

56.     The First Claim for Relief in the Complaint, based on Utah Code Section 25-6-202(1)(a), alleges that Cobblestone made the Transfers "with actual intent to hinder, delay or defraud" its creditors.[79]

57.     Plaskolite was not an "insider" of any of the receivership entities.[80]

58.     Cobblestone did not retain possession of the property transferred – it was paid and delivered to Plaskolite.[81]

59.     The transfers, and the transaction to which they related, were not concealed; the transaction was documented in a customary way, and documentation of the transaction was

---

[75] Plaskolite's 39 Motion at 8-9 ¶31 (citing Klein Dep. at 43:24-44:9). The Receiver did not dispute this fact. Receiver's 52 Opposition at 3-6. Plaskolite Opposition at 4.

[76] Plaskolite's 39 Motion at 9 ¶32 (citing Exhibit A: Klein Dep. at. 27:10-21). The Receiver did not dispute this fact. Receiver's 52 Opposition at 3-6. Plaskolite Opposition at 4.

[77] Plaskolite's 39 Motion at 9, ¶36. The Receiver did not dispute this fact. Receiver's 52 Opposition at 3-6. Plaskolite Opposition at 4.

[78] Plaskolite's 39 Motion at 9 ¶37 (citing Exhibit A: Klein Dep. At 106:9-107:4). The Receiver did not dispute this fact. Receiver's 52 Opposition at 3-6. Plaskolite Opposition at 4.

[79] Plaskolite's 39 Motion at 10, ¶38. The Receiver did not dispute this fact. Receiver's 52 Opposition at 3-6.

[80] Plaskolite's 39 Motion at 10, ¶39 (citing Exhibit B:  Hoffman Dep. at 39:2-10). The Receiver did not dispute this fact. Receiver's 52 Opposition at 3-6.

[81] Plaskolite's 39 Motion at 10 ¶40 (citing Exhibit A:  Klein Dep. at 106:9-18). The Receiver did not dispute this fact. Receiver's 52 Opposition at 3-6.

available to the Receiver in the records available to him.[82]

60.    Prior to the transaction, the business of Cobblestone was well known to the Department of Justice, as was the past sale of goods by Plaskolite to IAS.[83]

61.    Cobblestone had not been sued, or threatened with suit, by any creditor (or anyone else) at the time of transaction with Plaskolite.[84]

62.    The Transfers did not involve substantially all of Cobblestone's assets. Cobblestone had approximately $2.65 million in its bank account on April 9, 2018 (before the Transfers), and approximately $2.05 million in its bank account on May 21, 2018 (after the Transfers), with no evidence of any recorded liability on the books and records of Cobblestone (or otherwise).[85]

63.    Cobblestone did not abscond; quite the opposite: the Receiver conducted discovery regarding Cobblestone in the Civil Enforcement Case, including a deposition of Randale Johnson among other depositions.[86]

64.    The Receiver has not identified any assets of Cobblestone that he could not locate.[87]

---

[82] Plaskolite's 39 Motion at 10, ¶41 (citing Exhibit A:  Klein Dep. at 44:10-18, 62:1-12). The Receiver asserts this fact is disputed because the Receivership Defendants used Cobblestone to purchase the lenses from Plaskolite because IAS, the entity that previously purchased the lenses was in the middle of a bench trial for the Civil Enforcement Case. Receiver's 52 Opposition at 4. The Receiver's objection is overruled because the Receiver did not dispute the truthfulness of the asserted fact, but merely provided additional facts.

[83] Plaskolite's 39 Motion at 10, ¶42 (citing Exhibit A:  Klein Dep. at 42:3-43:18). The Receiver did not dispute this fact. Receiver's 52 Opposition at 3-6.

[84] Plaskolite's 39 Motion at 10, ¶43 (citing Exhibit A:  Klein Dep. at 107:5-8). The Receiver did not dispute this fact. Receiver's 52 Opposition at 3-6.

[85] Plaskolite's 39 Motion at 11, ¶44 (citing Exhibit B:  Hoffman Dep. at 28:20-29:9, 43:3-20; Exhibit E: List of Cobblestone Bank Transactions, and related documents (Deposition Exhibit 2). The Receiver did not dispute this fact. Receiver's 52 Opposition at 3-6.

[86] Plaskolite's 39 Motion at 11, ¶45 (citing Exhibit A:  Klein Dep. at 17:5-20:22). The Receiver did not dispute this fact. Receiver's 52 Opposition at 3-6.

[87] Plaskolite's 39 Motion at 11, ¶46 (citing Exhibit A:  Klein Dep. At 107:9-13). The Receiver did not dispute this fact. Receiver's 52 Opposition at 3-6.

65.     Cobblestone's records reflect no substantial (or any) debt incurred shortly before or shortly after the Transfers, and neither the Receiver nor his agent Mr. Hoffman can identify any transaction of Cobblestone recorded as a liability.[88]

66.     The Receiver has no evidence that Plaskolite had a lien on any assets of Cobblestone.[89]

### Plaskolite and Cobblestone in the Civil Enforcement Action

67.     Plaskolite was not a party to the Civil Enforcement Case.

68.     The Department of Justice did not sue Cobblestone in the Civil Enforcement Case.

69.     The Department of Justice asserted no claims against Cobblestone in the Civil Enforcement Case.

70.     No monetary judgment was entered against Cobblestone in the Civil Enforcement Case.[90]

71.     The Receiver has no information suggesting that Plaskolite had any involvement in the sale of solar energy systems by any of the Receivership Entities.[91]

72.     The Receiver has no information indicating that Plaskolite had any involvement in giving advice to anybody doing business with any of the receivership about tax benefits, tax credits, or tax-related issues.[92]

---

[88] Plaskolite's 39 Motion at 12, ¶49 (citing Exhibit B:  Hoffman Dep. at 40:25-41:8; Exhibit A:  Klein Dep. at 51:17-52:19). The Receiver did not dispute this fact. Receiver's 52 Opposition at 3-6.

[89] Plaskolite's 39 Motion at 12, ¶50 (citing Exhibit A:  Klein Dep. at 105:20-106:1). The Receiver did not dispute this fact. Receiver's 52 Opposition at 3-6.

[90] Plaskolite's 39 Motion at 13, ¶56 (citing Exhibit A:  Klein Dep. at 30:12-15). The Receiver did not dispute this fact. Receiver's 52 Opposition at 3-6.

[91] Plaskolite's 39 Motion at 13, ¶57 (citing Exhibit A:  Klein Dep. at 109:1-7). The Receiver did not dispute this fact. Receiver's 52 Opposition at 3-6.

[92] Plaskolite's 39 Motion at 13, ¶58 (citing Exhibit A:  Klein Dep. at 110:10-15). The Receiver did not dispute this fact. Receiver's 52 Opposition at 3-6.

**Evidence about Cobblestone**

73.     Cobblestone had no source of income from any legitimate business operations, and over 99.8% of the money Cobblestone received came from other Receivership Defendants and insiders.[93]

74.     Cobblestone transferred substantially all of its assets to Glenda Johnson on June 22, 2018, the date the Court issued its findings on the record that Receivership Defendants had engaged in a "massive fraud."[94]

## V.     STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A factual dispute is genuine when "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way"[95] or "if a reasonable jury could return a verdict for the nonmoving party."[96] A fact is material if "it is essential to the proper disposition of [a] claim."[97] And in ruling on a motion for summary judgment, "the factual record" and "all reasonable inferences" are viewed in a light most favorable to the nonmoving party.[98] "[A]t the summary judgment stage the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is

---

[93] Receiver's 52 Opposition at 17, ¶57. Plaskolite did not dispute this fact. Plaskolite's 62 Reply at 2. The Receiver did not dispute this fact. Receiver's 52 Opposition at 3-6.

[94] Receiver's 52 Opposition at 17 ¶58. Plaskolite did not dispute this fact. Plaskolite's 62 Reply at 2.

[95] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[96] *Universal Money Ctrs., Inc. v. Am. Tel. & Tel. Co.*, 22 F.3d 1527, 1529 (10th Cir. 1994).

[97] *Adler*, 144 F.3d at 670.

[98] *Id.*

a genuine issue for trial."[99] "To survive summary judgment, [plaintiff must] present some evidence beyond the allegations in his complaint to support his allegations.[100]

## VI.    DISCUSSION

### A.    The Civil Enforcement Case Findings May Be Used in this Case

The 84 Memorandum Decision disposed of the arguments Plaskolite made against the use of the findings in the Civil Enforcement Case, CEC Main Findings, and other CEC decisions and orders.[101] This order repeats the same analysis found in the 84 Memorandum Decision.

Plaskolite objects to the Receiver's use of findings made in the Civil Enforcement Case in the CEC Main Findings and in other CEC decisions and orders (collectively "CEC Findings") because:

> (1) neither Plaskolite nor Cobblestone were parties to the CEC;
> (2) the Receiver relies so heavily on the CEC Findings that "he has no intention of proving the 'tax fraud' he alleges in the Complaint";
> (3) there is a total disconnect between the CEC "tax fraud" issues and whether a creditor of Cobblestone was defrauded by the Transfers at issue in this case; and
> (4) even if the Receiver could rely on the CEC Findings, some of the findings directly defeat Plaintiff's claims against Plaskolite.[102]

Plaskolite's Response also raises a hearsay objection[103] and also raises personal knowledge objections to the Receiver's Declaration. Plaskolite says that documents attached to the Receiver's Declaration are hearsay, "if not double hearsay."[104]

---

[99] *Forth v. Laramie Cnty. Sch. Dist. No. 1*, 85 F.4th 1044, 1052 (10th Cir. 2023).

[100] *Askew v. United States*, No. 23-3046, 2024 WL 242858 at *2 (10th Cir. Jan. 23, 2024) (internal quotation marks omitted).

[101] 84 Memorandum Decision at 23-39.

[102] Plaskolite's Opposition at 28.

[103] Plaskolite's Opposition at 28-29.

[104] Plaskolite's Opposition at 13-14.

In analyzing Plaskolite's argument about the CEC findings, a significant distinction must be noted between (a) the findings and orders adjudicating the fraud and establishing the receivership, and (b) the facts pertaining to the transactions between the Receivership Entities and Plaskolite ("Plaskolite Transactions"). The fraud has been adjudicated and the receivership has been established.[105] However, the facts of the Plaskolite Transactions are the subject of this litigation. Nothing in the CEC Findings impinges on the facts relevant to the Plaskolite Transactions. However, the briefing on this Motion between the Receiver and Plaskolite has established that many material Plaskolite Transaction facts are not in dispute.[106]

1. **Judicial Notice May Be Taken of Findings in the Civil Enforcement Action**

The Tenth Circuit confronted similar concerns in another case arising out of this receivership. Trudy Shepherd, "a salesperson who sold solar lenses to investors,"[107] sought to "collaterally attack[] the factual findings made in the Civil Enforcement Case."[108]

> [S]he claims . . . the solar energy tax scheme was a legitimate enterprise. Indeed, she asserts that the solar lenses were "fully operational," and would eventually be used to produce electricity. As such, she attempts to relitigate the factual findings and legal conclusions reached and affirmed in the Civil Enforcement case.[109]

Examining her argument in a plain error analysis, the Tenth Circuit found that "the district court appropriately took judicial notice of the factual findings that it made in the Civil Enforcement Case under Federal Rule of Evidence 201."[110] The Tenth Circuit relied on its opinion in a case over 40 years old:

---

[105] These facts are contained in Undisputed Facts Section at ¶¶1-5.

[106] Undisputed Facts Section at ¶¶29-59.

[107] *Klein v. Shepherd*, No. 21-4064, 2023 WL 4542160 at *1 (10th Cir. July 14, 2023).

[108] *Shepherd*, at *5.

[109] *Shepherd*, at *5.

[110] *Shepherd*, at *5.

> We have made clear that a district court may "take judicial notice, whether requested or not . . . of its own records and files, and facts which are part of its public records." *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979). Indeed, "[j]udicial notice is particularly applicable to the court's own records of prior litigation closely related to the case before it." *Id.*[111]

Judicial notice of the core facts found in the civil case establishing the receivership – the Civil Enforcement Action – is appropriate. This Receiver has filed over 80 ancillary actions. Relitigating core facts that established the receivership in each of those ancillary actions would dissipate the receivership assets, defeating its purpose. And those foundational facts to the Receivership are not unique to the claim against Plaskolite or others from whom disgorgement is sought.

**2.   The Dangers of Use of Judicial Opinions from Other Cases Are Not Present Here**

Plaskolite relies on *MCC Mgmt. of Naples, Inc. v. Int'l Bancshares Corp.*,[112] to support its argument that the findings from the Civil Enforcement Case are inadmissible hearsay.[113] The underlying case from the Western District of Oklahoma considered the admission of a judicial opinion issued in a Florida malpractice and fraud conspiracy case finding that two lawyers had not violated ethical rules or attorney client privilege in handling some evidence. The district court was managing a trial in which those lawyers as plaintiffs sued for breach of contract and fraud in a dispute over tax benefits. Use of the Florida opinion as evidence in the Oklahoma case was hotly contested.

The Tenth Circuit in *MCC* quoted and relied on *Johnson v. Colt Indus. Operating Corp.*, a 1986 case arising out of Kansas in which "a Missouri state-court decision [was erroneously

---

[111] *Id.*

[112] 468 F. App'x 816, 823 (10th Cir. 2012).

[113] Plaskolite's Opposition at 6.

introduced] to show that a Colt executive knew that a dropped pistol could discharge."[114] Plaskolite claims that *MCC* holds that judicial opinions in other cases are hearsay so that any reliance on papers from the Civil Enforcement Case is forbidden.[115]

In *Johnson*, the Tenth Circuit declared that "the admission of a judicial opinion as substantive evidence presents obvious dangers." [116] The court detailed several problems, including jury confusion about (a) weight to be given the opinion as evidence, (b) the binding effect of the opinion in the case, or (c) whether the opinion overrides the jury instructions.[117] The court cautioned "a judicial opinion should be admitted as substantive evidence of a similar accident only in the rarest of cases when no other form of evidence is available and then only with detailed limiting instructions."[118] But the 1986 *Johnson* opinion found admission of the opinion from Missouri was harmless error.[119]

And in *MCC*, the 2012 case cited by Plaskolite, the Tenth Circuit observed:

> The guiding principle, then, in admitting what we might call "judicial" evidence is that, notwithstanding its special potency, it must be treated like any other evidence. There is no bright-line rule against its admission. In evaluating whether the district court's Rule 403 balancing was an abuse of discretion, we might consider: How aggressive was the use of the prejudicial evidence? Were other means available to establish the claim or defense? What exactly was the judicial finding? Was it a factual finding? Above all, the question is: did the judicial representation prevent the jury from making its own, and perhaps different, finding?[120]

---

[114] *MCC*, 468 F. App'x at 823.

[115] Plaskolite's Opposition at 6.

[116] *Johnson v. Colt Indus. Operating Corp.*, 797 F.2d 1530, 1534 (10th Cir. 1986).

[117] *Id.* at 1534

[118] *Id.*

[119] *Johnson*, 797 F.2d at 1535.

[120] *MCC Mgmt. of Naples, Inc. v. Int'l Bancshares Corp.,* 468 F. App'x 816, 824 (10th Cir. 2012).

The Tenth Circuit calls for a fact sensitive analysis of the use of judicial records and opinions. The Receiver is not seeking to introduce judicial orders into evidence, but to rely on adjudicated facts establishing the legitimacy, purpose, and scope of the receivership. And unlike *Johnson*, the 1986 product liability case, the Receiver does *not* allege similarity of Plaskolite transactions to any other ancillary case seeking recovery for a fraudulent transfer. Instead, the Receiver relies on findings from the Civil Enforcement Case to explain the *existence* of the receivership and the *context* in which the Plaskolite transactions occurred. The substance of the Plaskolite transactions are the subject of this litigation.

And unlike *MCC*, the 2012 malpractice fraud and conspiracy case, the Civil Enforcement Case documents and findings are not central to the dispute between the Receiver and Plaskolite. They are *foundational* to the Receiver's role and context of the claim against Plaskolite. Plaskolite is able to litigate the unique issues that pertain to it, as an alleged debtor to the receiver-creditor. This litigation is about whether the Plaskolite transactions are transfers subject to voiding or whether these transactions led to unjust enrichment by Plaskolite. But the predicate status of the defunct enterprises and the status of the Receiver are not open to re-litigation. Any jury in this case would not be given judicial opinion documents but would be instructed on facts found in the CEC action and would be fully aware of the reasons for establishment of the receivership. Similarly, CEC Findings are used in this summary judgment order.

### 3.   Receivership and UVTA Proceedings Have Equitable Natures.

Plaskolite is under the impression that the principles of equity do not aid a Receiver. But imposition of a receivership is an equitable remedy. And restoration of property improperly transferred from others is an equitable remedy, whether by statutorily defining voidable transfer standards or unjust enrichment. In a similar securities receivership setting, the 9th Circuit stated:

The federal courts have inherent equitable authority to issue a variety of "ancillary relief" measures in actions brought by the SEC to enforce the federal securities laws. . . . The power of a district court to impose a receivership or grant other forms of ancillary relief does not in the first instance depend on a statutory grant of power from the securities laws. Rather, the authority derives from the inherent power of a court of equity to fashion effective relief.[121]

The inherent power of the court to fashion effective relief requires that Plaskolite be able to fully litigate the issues in its transactions with the Receivership Entities but not relitigate the basis of the receivership. The goal of receiverships is to protect assets, conserve resources, and avoid "expensive, distracting, and complex satellite litigation."[122]

### 4. Issue Preclusion, Collateral Estoppel, and Res Judicata Are Inapplicable

Against this backdrop, Plaskolite's arguments about issue preclusion, collateral estoppel, and res judicata are misplaced.[123] The CEC Findings can be relied on through judicial notice as the context for this lawsuit by the Receiver. Core conclusions in the CEC, such as the existence of the tax fraud practiced by the entities controlled by Johnson and the representative status and powers of the Receiver cannot be challenged by Plaskolite. But the facts as to the Cobblestone-Plaskolite transactions are to be decided in this litigation.

Plaskolite's position is similar to that of a garnishee from whom property is sought to satisfy an established civil monetary judgment. "The remedies of attachment and garnishment are in aid of and ancillary to the main action, and have nothing to do with the merits."[124] The garnishee is not permitted to challenge the underlying debt after it is adjudicated against the debtor. But the garnishee may challenge the propriety of garnishing the specific property of the debtor that the garnishee holds.

---

[121] *S.E.C. v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980).

[122] *Fed. Trade Comm'n v. Noland,* No. CV-20-00047-PHX-DWL, 2020 WL 4530459 at *7 (D. Ariz. Aug. 6, 2020).

[123] Plaskolite's Opposition at 7-8.

[124] *Spears v. Preble*, 661 P.2d 1337, 1343 (Okla. 1983).

### 5. Plaskolite Is Not Denied Due Process

Plaskolite claims that "[a]ny consideration in the present case of the findings in the Civil Enforcement Case as binding on Plaskolite would violate Plaskolite's fundamental right to due process."[125]  But Plaskolite does not consider: (a) that the essential components of due process may be provided in many forms; or (b) that due process does not require relitigation of facts that are not central to claims and defenses between parties.

"Due process requires notice and an opportunity to be heard. Due process essentially requires that the procedures be fair. The process that is due varies according to the nature of the right and to the type of proceedings."[126] "A district court does not generally abuse its discretion if its summary procedures permit parties to present evidence when the facts are in dispute and to make arguments regarding those facts."[127]

In *SEC v. Elliott,* the district court ordered the liquidation of Ponzi scheme assets and established a claims procedure by which claimants would file their proofs of claim.[128] The receiver then filed a proposed plan of distribution and the court required "fill-in-the-blank pleading forms for filing objections within thirty days of the notice."[129] Next, the receiver filed responses to the written objections and the court entered a distribution order, without any hearings. Two claimants had "filed a motion asking for a hearing, intervention, and limited discovery on the issue of fraudulent transfer"[130] but the trial court decided no hearing would occur and provided no reasoning in its final order. The appellate court ordered a hearing on the

---

[125] Plaskolite's Opposition at 8.

[126] *S.E.C. v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992).

[127] *Id.* at 1567.

[128] *Id.* at 1566.

[129] *Id.*

[130] *Id.* at 1568.

claims to ensure fairness.[131] However, some claimants wanted a hearing and did not get one at the trial court and later found no relief on appeal.[132] The 11th Circuit stated "we hold that summary proceedings do not per se violate claimants' due process interest."[133]

Another *Elliott* claimant was sued by the receiver in an ancillary action, but the district court ordered resolution of the claims in the principal receivership proceeding. The district court did not permit the claimant "discovery or an opportunity to present evidence on his claims and defenses,"[134] and summarily denied presentation of a setoff claim. The appellate court ordered further proceedings.[135]

Each of the appealing claimants were permitted to litigate their *claims*, but none of the proceedings ordered by the 11th Circuit in *Elliott* required relitigation of the *fraud* that established the receivership. Contrary to Plaskolite's arguments, there is no hard and fast rule about the form of proceedings that provide due process. Requiring relitigation of the entire foundation of the receivership in adjudication of each claim would be a waste of judicial resources. Plaskolite has been and will be afforded the opportunity to present evidence on the entirety of the transactions between it and the entities supervised by the Receiver.

The close integration between a receivership and disgorgement proceedings such as this is illustrated in *S.E.C. v. Wencke*.[136] In *Wencke*, the receiver sought "disgorgement in summary post-judgment proceedings" rather than in "the independent action [the receiver] filed in

---

[131] *S.E.C. v. Elliott*, 953 F.2d 1560, 1568 (11th Cir. 1992).

[132] *Id.* at 1570.

[133] *Id.* at 1571.

[134] *Id.* at 1572.

[135] *Id.* at 1575.

[136] 783 F.2d 829 (9th Cir. 1986).

1980."[137] Similar to the 11th Circuit in *Elliott,* the 9th Circuit in *Wencke* disavowed bright line procedural strictures. "[T]o determine the adequacy of a summary proceeding in a given case, courts must focus not on the form of the proceedings, but on their substance[.]"[138] Even though there was neither a complaint nor an answer, "the parties . . . had notice concerning the nature of the proceedings, were permitted extensive discovery, including the taking of depositions, and were permitted to file briefs and exhibits with the district court, and . . . the district court applied the Federal Rules of Evidence and Civil Procedure."[139] Plaskolite has all those benefits in defending the claims against it. Due process is not violated.

### 6. There Is No Disconnect Between the Civil Enforcement Action and This Case

Plaskolite also argues there is a "disconnect" between the CEC and this case.[140] Because no legal authority is cited in this section of the argument, it is necessary to examine the two points Plaskolite makes.

First, Plaskolite correctly points out that Cobblestone was not a Receivership Defendant. "The Civil Enforcement Case was about alleged tax fraud engaged in by the defendants being sued by the DOJ – which defendants, notably, did NOT include Cobblestone."[141] However, the Affiliates Order determined that Neldon Johnson created, controls, and owns Cobblestone and that Cobblestone was used by the CEC Defendants "to perpetrate a fraud to enable funding for Neldon Johnson."[142] Rarely can every entity in a complex scheme be identified at the start of litigation, but the failure to discover all entities does not immunize them from asset tracing.

---

[137] *S.E.C. v. Wencke*, 783 F.2d 829, 836 (9th Cir. 1986).

[138] *Id.* at 836.

[139] *Id.* at 836-837.

[140] Plaskolite's Opposition at 28.

[141] Plaskolite's Opposition at 29.

[142] Affiliates Order ¶2 at 4.

While Cobblestone was not a defendant in the CEC[143] and was not subject to the first post-trial injunction,[144] the Receiver intends to produce evidence that the Cobblestone funds to which funded the Plaskolite purchase came from RaPower3, the principal CEC Defendant.[145] The Receiver is authorized to seek recovery of receivership funds, which includes funds transferred to third-party entities. Therefore, the Receiver may seek the funds that Cobblestone transferred to Plaskolite.

Second, Plaskolite raises the objection that there is no creditor under the UVTA:

> By contrast, [the Receiver's] claims against [Plaskolite] require creditors of Cobblestone, and proof by [the Receiver] that those creditors were somehow defrauded by Cobblestone's purchase of goods from Plaskolite. Since there is no proof that Cobblestone had any creditors – and since there is no proof that the goods supplied by Plaskolite were worth anything other than what Cobblestone paid for them – [the Receiver's] claims against Plaskolite fail as a matter of law regardless of what findings were made in the Civil Enforcement Case with respect to the parties to that case, findings of fraud or otherwise.[146]

This argument is disposed of in Section B.1. The Receiver is the creditor on behalf of the defrauded Receivership Entities. Therefore, there is no "disconnect" between the CEC and this case that would preclude the Receiver's claims against Plaskolite.

### 7. Plaskolite's Hearsay, Personal Knowledge, "Commentary," and Authentication Objections are Overruled

Plaskolite's Reply raises four major objections to materials the Receiver presents in opposition to the Motion.

a. Hearsay;
b. Lack of personal knowledge;
c. "Commentary"; and

---

[143] *Id.*

[144] Plaskolite's Opposition at 31.

[145] Transfers from RAPower-3 to Cobblestone Centre 2013-2018, Exhibit 3 to Receiver's Declaration, docket no. 52-3, filed December 10, 2021.

[146] Plaskolite's 39 Motion at 28. *See also* Plaskolite's 62 Reply at 19.

d. Lack of authentication.[147]

*Hearsay Objections***:** Plaskolite's first hearsay objection is to the CEC Decisions and

Orders attached to the Receiver's 52 Opposition to Plaskolite's 39 Motion as Exhibits J, K, O, P,

Q, and R. These are:

- Memorandum Decision and Order on Receiver's Motion to Include Affiliates and Subsidiaries in Receivership ("Affiliates Order"), docket no. 636, 2:15-cv-828, filed May 3, 2019, attached to Receiver's 52 Opposition as Exhibit J, docket no. 52-4, filed December 10, 2021.
- Memorandum Decision and Order Freezing Assets and to Appoint a Receiver, docket no. 444, 2:15-cv-828, filed August 22, 2018, attached to Receiver's 52, as Exhibit K, docket no. 52-5, December 10, 2021.
- Corrected Receivership Order, docket no. 491, 2:15-cv-828, filed November 1, 2018, attached to Receiver's 52 Opposition at Exhibit O, docket no. 52-14, filed December 10, 2021.
- Bench Ruling, Civil Enforcement Case, June 22, 2018, portion of docket no. 421, 2:15-cv-828, filed June 20, 2019, attached to Receiver's 52 Opposition at Exhibit P, docket no. 52-15, filed December 10, 2021.
- Memorandum Decision and Order Granting Turnover Motion; Denying Motion to Strike; Overruling Objection to Authentication of Exhibits; and Overruling Objection to Rejection of Reputed Contract, Docket No. 1007, 2:15-cv-828 filed September 15, 2020, attached as Exhibit Q to Receiver's 52 Opposition, docket no. 52-17.
- Civil Contempt Order Re: Neldon Johnson, Glenda Johnson, LaGrand Johnson, and Randale Johnson, docket no. 947, 2:15-cv-828, filed July 6, 2020, attached as Exhibit R to Receiver's 52 Opposition, docket no. 52-17, filed December 10, 2021.

Each of these Exhibits is a decision of this court in the CEC. None of these Exhibits

contains facts about the Plaskolite Transactions. These facts established in the CEC are not at

issue in this case. These Exhibits are contextual, foundational, and distinct from the factual

merits of the Plaskolite Transactions. These documents are not hearsay in this proceeding

between the Receiver and Plaskolite.

---

[147] Plaskolite's Opposition at 5-6, 14, 28.

Plaskolite's second hearsay objection is that the Receiver's Declaration[148] opposing the Motion "contains hearsay if not double hearsay."[149] Each of the hearsay objections will be examined in turn.

*Websites of Public Agencies*: Without specifically identifying documents, Plaskolite objects to documents attached to the Receiver's Declaration reportedly obtained "from the website of a public agency . . . [and] from another entity, such as a law firm . . . [as] hearsay where, as here, they are offered for the truth of the matters asserted therein."[150] Plaskolite does not specify how these unidentified documents relate to specific facts or paragraphs in the Receiver's Declaration.

It is likely Plaskolite refers to the Findings of Fact, Conclusions of Law, and Order of the Securities Division of the Department of Business Regulation of the State of Utah issued in 1989, That document found Receivership Defendant IAS had violated Utah securities laws, requiring rescission to be offered all purchasers, requiring payment of a forfeiture, and ending the use of unregistered salespersons. This document supports Paragraph 4 of the Receiver's Declaration:

> The lens purchase investment program created and sold by IAS, RaPower, XSun, Solco, and other affiliates of Neldon Johnson was not registered with the Utah Division of Securities ("Securities Division").

This fact is of little significance in this case and is not included in the Statement of Undisputed Facts.

Plaskolite is also likely referring to:

(a)      a few pages from the website of the Utah Division of Securities purporting to show that no records are on file for RaPower, XSun, Solco, Cobblestone Centre,

---

[148] Receiver's Exhibit I to Receiver's 52 Opposition docket no. 52-3, filed December 10, 2021.

[149] Plaskolite's Opposition at 13.

[150] Plaskolite's Opposition at 14.

and LTB1, which support the Receiver's Declaration ¶4c. that "a search of the the online database of the Securities Division . . . reported that there were no filings of registrations or exemptions by any of those entities."

(b)    a few pages from the EDGAR database of the SES which support the Receiver's Declaration ¶5 that "there were "no filings by RaPower, LTBl, or Cobblestone Centre."

Those statements are of no consequence in this case. Additionally, arguments that are underdeveloped and inadequately briefed are deemed waived.[151] This objection is waived but also substantively overruled.

*Documents from another entity:* Plaskolite also objects to the Receiver's Declaration including "[d]ocuments reportedly obtained from another entity, such as a law firm . . . ."[152] There are no such documents attached to the Receiver's Declaration. Arguments that are underdeveloped and inadequately briefed are deemed waived.[153] This objection is waived and substantively overruled.

*Deposition excerpts:* Plaskolite also objects to the Receiver's Declaration attaching "[e]xcerpts of depositions taken in another case, to which Plaskolite was not a party . . . ."[154] One excerpt from one deposition – that of Neldon Johnson – is attached to the Receiver's Declaration. It is attached to support the Receiver's Declaration ¶ 4d. that Neldon Johnson admitted in the deposition that "IAS has sold unregistered stock to RaPower and another affiliated entity, Solstice Enterprises." This fact is of no consequence in this case. The objection is overruled.

---

[151] *Valdez v. Macdonald*, 66 F.4th 796, 834 (10th Cir. 2023) (holding an argument is waived for being conclusory, underdeveloped, and inadequately briefed).

[152] Plaskolite's Opposition at 14.

[153] *Valdez v. Macdonald*, 66 F.4th 796, 834 (10th Cir. 2023) (holding an argument is waived for being conclusory, underdeveloped, and inadequately briefed).

[154] Plaskolite's Opposition at 14.

**Lack of personal knowledge.** Plaskolite also objects that the Receiver's Declaration is "not based on the Receiver's personal knowledge."[155] This objection appears to apply to "Paragraph 3 [which allegedly] includes factual statements plainly not based on personal knowledge."[156] That paragraph reads:

> RaPower-3, LLC and other companies affiliated with Neldon Johnson sold solar lenses to purchasers. The solar lenses were combined with a maintenance and operations agreement by which one of the Johnson affiliates would install and maintain the lenses, collect revenues generated from operation (or rental) of the lenses, and remit promised profits to the lens purchasers.[157]

Significant foundation for this paragraph is laid in the two paragraphs that precede it, explaining the Receiver's appointment and "extensive investigation of the Receivership Defendants and Receivership Entities." This paragraph is also a summary of CEC Findings.[158] This objection is overruled.

**"Commentary" objection.** Without citation of authority, Plaskolite objects that paragraphs 4 through 8 of the Receiver's Declaration contains "commentary," which is also "objectionable as improper belated expert opinion . . . ."[159] This objection is not articulated with sufficient clarity to warrant analysis. But the contents of these paragraphs are recitations of information gathered in the course of the Receiver's work, and fully within his competence in that capacity. This objection is overruled.

---

[155] Plaskolite's Opposition at 13.

[156] Plaskolite's Opposition at 14.

[157] Receiver's Declaration ¶3 at 2.

[158] CEC Main Findings ¶¶ 16, 75-86, 141, 285, 316-317.

[159] Plaskolite's Opposition at 14.

**Lack of Authentication.** Plaskolite objects that three exhibits from the CEC[160] attached as Exhibit H[161] to the Receiver's 52 Opposition on the basis that they are not authenticated.[162] These documents were footnoted to the Receiver's Statement of Undisputed Facts ¶14.[163]

> The Receivership Defendants advertised substantial returns and tax benefits in exchange for only a down payment on the solar lenses.

That fact is a summary of CEC Main Findings ¶¶ 211-214 which was critical to the tax fraud scheme, and the image in Exhibit 496 is part of the CEC Main Findings ¶ 211. That paragraph also references Exhibits 497 and 777.

As specified in Section V.A.1. of this Order, in *Klein v. Shepherd* the Tenth Circuit held the District Court appropriately took judicial notice of facts from the Civil Enforcement Case ("CEC") under Federal Rule of Evidence 201.[164] The Chart from the fourth page of Exhibit H was used in the CEC Memorandum Decision and Order, and was used in Paragraph 13 of the Undisputed Material Facts of this Memorandum Order and Decision.[165] Therefore, as noted in footnote 30 to Paragraph 13 in the Undisputed Material Facts, Plaskolite's objection is overruled.

### 8. Facts Found in the Civil Enforcement Action Do Not Defeat the Receiver's Claim

Finally, Plaskolite argues that CEC evidence and CEC Main Findings cut against the Receiver's claim against Plaskolite. Plaskolite makes two arguments: (a) that the CEC Main Findings determined the value of the lenses and (b) that since Cobblestone was not prevented

---

[160] CEC Exhibits 496, 497 and 777.

[161] Exhibit H, docket no. 52-2, filed December 10, 2021; *see also* Appendix of Exhibits, docket no. 52-1, filed December 10, 2021.

[162] Plaskolite's Opposition at 15.

[163] Plaskolite's Opposition at 5-6.

[164] *Klein v. Shepherd*, No. 21-4064, 2023 WL 4542160 at *3 (10th Cir. July 14, 2023).

[165] Undisputed Material Fact Section ¶13; CEC Memorandum Order and Decision, docket no. 39-8, Exhibit G; Receiver's Motion at 5-6, ¶14 (citing Receiver's Exhibit H, Charts of Entities at 1, docket no. 52-2, filed, December 10, 2021).

from engaging in the solar lens business, "Cobblestone could still engage in a business related to solar energy—and, could still engage in arms-length transactions with other parties in connection with such a business such as that with Plaskolite."[166] These arguments fail.

**No Bar Against Cobblestone Selling Lenses:** Plaskolite's second argument based on the CEC Findings is that "the Court did not even then issue any injunction against Cobblestone, nor did the Court enjoin any of the persons who may have had some connection to Cobblestone from engaging in a business relating to solar energy system."[167] Plaskolite is correct. There was no court order preventing Cobblestone or Randale Johnson from purchasing lenses at the time the order was placed, when the payment was made and received, and when the lenses were delivered. However, this fact is not conclusive in determining whether any value was received by Cobblestone, which is now one of the Receivership Entities. The absence of an injunction against Cobblestone is not by itself decisive of the Receiver's claims as it has no bearing on the value received by the Receivership Entities.

**Lens Value Findings:** Plaskolite marshals the CEC Main Findings in support of its argument that the Receiver is bound by a finding of value:

> Specifically, in paragraphs 415-419 of its Findings of Fact and Conclusions of Law, the Court found that the value of goods that Plaskolite provided was what Plaskolite was paid for them. Specifically, the Court found that Plaskolite was paid between $52 and $70 for rectangular sheets of plastic; that each sheet could be cut into a triangular lens; that there was no other credible evidence about other possible costs of a lens; and that "[t]he correct valuation of a 'lens' is close to its raw cost and does not exceed $100."[168]

---

[166] Plaskolite's Opposition at 31.

[167] Plaskolite's Opposition at 31.

[168] Plaskolite's Opposition at 30.

Plaskolite concludes that this finding "directly defeats the [Receiver's] contention that Cobblestone did not receive reasonably equivalent value."[169]

First, Plaskolite measures "reasonably equivalent value" in the wrong way. "[I]n determining whether reasonably equivalent value was given, the focus is on whether the debtor [Receivership Entities] received reasonably equivalent value from the transfer."[170] "In other words, the question is not *whether [Plaskolite] 'gave* reasonably equivalent value; it is *whether [the Receivership Entities] received* reasonably equivalent value.'"[171]

Second, in the CEC Main Findings, the issue was value of the lenses relative to the price investors paid for lenses. A high sale price allowed larger tax credits and benefits to be claimed. An inflated price was evidence of fraud. The finding preceding those cited by Plaskolite made this comparison. "Defendants currently sell a single solar lens for a total purported price of $3,500."[172] Again, the issue in the CEC Main Findings was not the value of a lens to the Receivership Entities, but the value of the lenses claimed by investors for tax purposes compared to the price the Receivership Entities paid Plaskolite.

Value of the lenses *to the Receivership Entities* was not directly at issue in the CEC. But facts necessary to find that value are included in the CEC Findings. The Receiver argues that Cobblestone and the Receivership Entities received no value from the purchase because "[Receivership] Defendants' technology does not work, and is not likely to work to produce

---

[169] *See* Plaskolite's Opposition at 30.

[170] *Miller v. Wulf*, 84 F. Supp. 3d 1266, 1276 (D. Utah 2015).

[171] *Klein v. Michelle Turpin & Assocs., P.C.*, No. 214CV00302 RJS PMW, 2016 WL 3661226 at *7 (D. Utah July 5, 2016) (citations omitted) (emphasis added).

[172] CEC Main Findings ¶ 415 at 83.

commercially viable electricity or solar process heat. Therefore, each 'lens' is just one component of an inoperable system."[173]

The fact summary above establishes the lack of real value of the lenses to the Receivership Entities.

> [T]he solar lenses were only the cover story for what the [CEC Defendants] were really selling: unlawful tax deductions and credits.[174] The purported solar energy technology and solar lenses . . . did not work and could not generate marketable energy. [T]he purported solar energy technology is not now, has never been, and never will be a commercial-grade solar energy system that converts sunlight into electrical power or other useful energy [and] [t]he solar lenses do not, either on their own or in conjunction with other components, use solar energy to generate [marketable electricity].[175] [T]he whole purpose of RaPower[] was to perpetrate a fraud to enable funding of the unsubstantiated, irrational dream of Nel[d]on Johnson. The same is true for the other entities Johnson established and used including IAS, SOLCO I, XSun Energy, Cobblestone, and the LTB entities."[176]

While the CEC Main Findings did not expressly establish any value for the lenses to the Receivership Entities, the CEC Main Findings established that the lenses have no real value to the Receivership Entities. The lenses were only props in a scam.

### B. The Receiver is entitled to summary judgment on his voidable transfer claim

The Receiver argues he is entitled to Summary Judgment for his voidable transfer claim because the transfers were made with the intent to defraud[177] and Plaskolite is not entitled to use the good faith defense.[178] In response, Plaskolite argues the Receiver is not entitled to summary judgment because: (1) no creditor of Cobblestone was harmed by the transactions;[179] (2) there is

---

[173] CEC Main Findings at 120; *see also* Receiver's Motion at 2, 9.

[174] Undisputed Material Fact ¶14.

[175] Undisputed Material Fact ¶16.

[176] Undisputed Material Fact ¶23.

[177] Receiver's Motion at 15.

[178] Receiver's Motion at 19-21.

[179] Plaskolite's Opposition at 17-19.

no evidence that the transfers were made with intent to cause harm to creditors;[180] and (3) genuine issues of material fact preclude summary judgment for Plaskolite's good-faith defense.[181] Plaskolite's three arguments fail, and the Receiver is entitled to Summary Judgment on his voidable transfer claim under Utah Code. § 25-6-202(1)(a).[182]

### 1. Cobblestone, the government, and the customers of the plastic lenses qualify as creditors under the Voidable Transfer Statute

The Receiver's remaining Voidable Transfer claim was brought under Utah Code. § 25-6-202(1)(a), which states in relevant part:

> A transfer made or obligation incurred by a *debtor* is voidable as to a *creditor*, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: (a) with actual intent to hinder, delay, or defraud *any creditor* of the debtor[.][183]

A "creditor" is defined as "a person [or entity] that has a claim." Additionally, a "debtor" is defined as "a person [or entity] that is liable on a claim."[184]

Plaskolite's argument that Cobblestone did not have any creditors fails because: (1) the government and the customers of the plastic lenses are "creditors" under Utah Code § 25-6-202(1)(a);[185] and (2) Cobblestone is a creditor under Utah Code § 25-6-202(1)(a) because it acted as an "evil zombie" under its officers' "spell," and it was injured by the CEC Defendants'

---

[180] Plaskolite's Opposition at 19-28.

[181] Plaskolite's Opposition at 31-34.

[182] The Receiver's Amended Complaint contained two different claims for fraudulent transfers, the first under 25-6-202(1)(a) and the second fraudulent transfer claim under § 25-6-202(1)(b). Amended Complaint at 8-9, docket no. 16, filed April 29, 2020. The Receiver later filed a Stipulated Motion to Dismiss the second fraudulent transfer claim under § 25-6-202(1)(b), and the Court granted the Motion for stipulated dismissal. Stipulated Motion to Dismiss Second and Third Causes of Action With Prejudice, docket no. 53, filed December 14, 2021; Docket Text Order, docket no. 54, filed December 15, 2021.

[183] Utah Code Ann. § 25-6-202(1)(a) (2017) (formerly Utah Code Ann. § 25-6-5(1)(a)) (emphasis added).

[184] *Id*. § 25-6-102(6).

[185] The government is a creditor because its claimed is based on the tax revenue that the Receivership Entities deprived it through the Receivership Entities fraudulent tax scheme. Additionally, the customers are creditors because they purchased plastic lenses based on the promise that the lenses generated electricity, and the lenses did not generate any electricity.

fraudulent scheme.[186] Additionally, Cobblestone is a "debtor" under Utah Code § 25-6-202(1)(a) because of its transaction with Plaskolite.[187]

The Tenth Circuit's opinion in *Klein v. Cornelius* establishes that a business entity abused by a fraudulent scheme, such as Cobblestone, qualifies as a defrauded creditor that can sue under Utah Code § 25-6-202(1)(a).[188] In *Cornelius*, Winsome Investment Trust ("Winsome") was an investment pool of investors; Winsome's founder operated it as a Ponzi scheme; and the defendant law firm argued that Winsome's receiver did not have standing to bring a claim under UFTA on behalf of Winsome.[189] Similar to Winsome, Cobblestone qualifies as a creditor because it was defrauded of its funds by the CEC Defendants and the CEC Defendants' officers.

Additionally, in *Klein v. Roe*, the Tenth Circuit reiterated that: (1) a business entity "abused by a fraudulent scheme qualifies as a defrauded creditor" under UVTA; and (2) "the receiver of such defrauded entities has standing to recover fraudulent transfers under the UVTA."[190] The applicable case law and the statutory definition of the term "creditor" establish that the CEC Defendants' customers, the government, and Cobblestone are creditors and Plaskolite's argument that Cobblestone did not have any creditors fails.

The Tenth Circuit's opinion in *Cornelius* also establishes that Cobblestone is a debtor under Utah Code § 25-6-202(1)(a).[191] In *Cornelius*, the receiver represented the receivership

---

[186] *Klein v. Cornelius*, 786 F.3d 1310, 1317 (10th Cir. 2015) (citing *Scholes v. Lehmann,* 56 F.3d 750, 753 (7th Cir.1995)).

[187] *Id*. at 1321.

[188] In *Cornelius*, the Tenth Circuit analyzed an earlier version of UVTA, which was then called the Uniform Fraudulent Transfer Act ("UFTA"). There were no material changes between the UFTA and the UVTA. Specifically, the only changes between the two statutes appear to be: (1) changing two male pronouns in Subsection (1)(b)(ii) to gender neutral nouns; (2) renumbering the statute; and (3) specifying that a creditor making a claim for relief under Subsection (1) has the burden of proving the elements of the claim for relief.

[189] *Cornelius*, 786 F.3d at 1316.

[190] *Klein v. Roe*, 76 F.4th 1020, 1029 (10th Cir. 2023) (citing Utah Code Ann. § 25-6-202 (2017)).

[191] *Cornelius*, 786 F.3d at 1321.

entity, Winsome, that operated as a Ponzi scheme before the receivership was established. The receiver sued a law firm that represented the fraudster's friend in a criminal proceeding in New Hampshire. Winsome paid the attorney's fees for the fraudster's friend even though the friend was not connected to Winsome, and the law firm did not provide any services to Winsome directly. The Tenth Circuit concluded that Winsome, *as a debtor*, did not receive reasonably equivalent value from these payments and, therefore, the law firm was liable under the UFTA for the payments it received from Winsome.[192] Therefore, a receivership entity, such as Cobblestone, may be a debtor and creditor under UVTA.

Plaskolite argues that Voidable Transfer claim fails at summary judgment because Plaskolite did not give any tax advice or provide any marketing services for the fraudulent tax scheme.[193] In other words, Plaskolite argues it had no direct knowledge and did not participate in the fraud. Plaskolite's argument is not persuasive because Utah Code. § 25-6-202(1)(a) does not require that *Plaskolite* possessed the intent to defraud any entities in order for the transaction to be voided. Instead, for a transaction to be voided, the statute only requires that the transaction occurs where *Cobblestone* (i.e., the debtor) intends to defraud any of its creditors.

### 2. The government, the customers of the plastic lenses, and the Receivership Entities were harmed by the transactions.

Plaskolite argues the Receiver is not entitled to summary judgment because no creditors were harmed by the transfers.[194] Plaskolite's argument is not correct. The CEC Freeze Order found that the creditors of the Receivership Entities, including the United States Treasury and customers who purchased the solar lenses, were harmed by the conduct of the CEC

---

[192] *Id*.

[193] Plaskolite's Opposition at 1.

[194] Plaskolite's Opposition at 17-19.

Defendants.[195] Judicial notice of the CEC is appropriate and is taken. Additionally, as stated in Section (B)(1) the Receivership Entities are creditors that were harmed by the transactions because: (1) the customers purchased plastic lenses based on the false promise that these lenses generated electricity from solar energy; (2) the government suffered the loss of tax revenue because customers claimed tax credits based on the false promise that these lenses used solar energy to generate electricity; and (3) Cobblestone purchased plastic lenses in furtherance of a fraudulent scheme that did not generate any electricity despite the Receivership Entities' representations to the contrary. These three creditors were all harmed by the transactions between Cobblestone and Plaskolite.

### 3. The Receiver is entitled to summary judgment on the fraudulent transfer claim based on the facts established in the CEC Action

The Receiver argues he is entitled to summary judgment on his remaining fraudulent transfer claim because the transactions were made with the intent to defraud creditors under Utah Code § 25-6-202(1)(a). This statute states in relevant part:

> A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: (a) with *actual intent* to hinder, delay, or defraud any creditor of the debtor[.][196]

The Receiver argues he is entitled to summary judgment on this claim because: (1) the Receivership Entities made the transfers with the actual intent to defraud;[197] (2) the Civil Enforcement Case already determined that the Receivership Entities made false or fraudulent statements pertaining to the plastic lenses and solar energy tax credits;[198] (3) several of the badges

---

[195] Freeze Order at 15-16.

[196] Utah Code Ann. § 25-6-202(1)(a) (2017) (emphasis added).

[197] Receiver's Motion at 17.

[198] Receiver's Motion at 17 (citing Freeze Order at 15-16).

of fraud are present;[199] and (4) Plaskolite is not entitled to use the good faith defense because Plaskolite did not Receiver the transfers in good faith.[200]

In response, Plaskolite argues: (1) the Receiver has alleged "no set of facts" to support an allegation that Cobblestone actually intended to hinder, delay, or defraud its creditors by making the transfers to Plaskolite;[201] (2) none of the eleven badges of fraud are present;[202] (3) the Receiver improperly relied on case law that pertains to Ponzi schemes to support its argument that the Receivership Entities had the actual intent to defraud;[203] and (4) the Receiver is improperly relying the District of Utah's findings in the civil enforcement case.[204]

The Receiver is entitled to summary judgment because the Civil Enforcement Case already held that the Receivership Entities engaged in fraud by selling the plastic lenses to customers under the false pretense that the customers would be able to claim tax credits by purchasing the plastic lenses.

> [The] whole purpose of . . . the Receivership Entities . . . was to perpetuate a fraud to enable funding for Neldon Johnson. The same is true for other entities Johnson created, controls, and owns . . . . Johnson has commingled funds between these entities, used their accounts to pay personal expenses, and transferred Receivership Property to and through them in an attempt to avoid creditors.[205]

The transactions between Cobblestone and Plaskolite were for the purchase of the plastic lenses, which were the primary component of the fraudulent scheme. The Receiver's Motion for Partial

---

[199] Receiver's Motion at 17-19.

[200] Receiver's Motion at 19-21.

[201] Receiver's Motion at 19.

[202] Receiver's Motion at 20-24.

[203] Receiver's Motion at 24-28.

[204] Receiver's Motion at 28-30.

[205] Freeze Order at 15-16.

Summary Judgment under Utah Code § 25-6-202(1)(a) is granted because there is no genuine

dispute as to any material fact, and the Receiver is entitled to judgment as a matter of law.

**4. The three badges of fraud that are present are a second independent ground that establish the Receiver is entitled to summary judgment for his fraudulent transfer claim**

The Court may use the eleven badges of fraud in Utah Code § 25-6-202(2) to determine

"actual intent to hinder, delay, or defraud any creditor" under Utah Code § 25-6-202(1)(a). The

badges of fraud are not an exclusive list. Utah Code § 25-6-202(2) states, in relevant part:

> To determine "actual intent" under Subsection (1)(a), consideration may be given, among other factors, to whether: (a) the transfer or obligation was to an insider; (b) the debtor retained possession or control of the property transferred after the transfer; (c) the transfer or obligation was disclosed or concealed; (d) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (e) the transfer was of substantially all the debtor's assets; (f) the debtor absconded; (g) the debtor removed or concealed assets; (h) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (i) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (j) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (k) the debtor transferred the essential assets of the business to a lienor that transferred the assets to an insider of the debtor.[206]

The Receiver argues several of the badges of fraud are present, and that these badges of

fraud establish that the Receiver is entitled to Summary Judgment on the fraudulent transfer

claim.[207] In response, Plaskolite argues none of the badges of fraud are present, and the absence

of these badges supports denying the Receiver's Motion for Summary Judgment. The badges of

fraud listed in Utah Code § 25-6-202(2)(c), (d), and (g) are present and establish that the

Receiver is entitled to summary judgment on the fraudulent transfer claim.

---

[206] *Id*. § 25-6-202(2)(a)-(k) (2017) (emphasis added).

[207] Receiver's Motion at 17-19.

First, the transfers were concealed, and Section 202(2)(c) is satisfied because Randale Johnson used Cobblestone to purchase the plastic lenses after:

(1) the Department of Justice contacted Plaskolite on July 15, 2015, to discuss Plaskolite's customer IAS;[208]

(2) Plaskolite received a subpoena from the Department of Justice on January 13, 2017, for the CEC and Plaskolite questioned internally whether it should continue to do business with IAS in light of the subpoena;

(3) Plaskolite's outside counsel stated he was concerned that Department of Justice would claw back the transactions at issue on February 12, 2018;[209] and

(4) Plaskolite became aware of a news release on February 26, 2018 that disclosed the Department of Justice was accusing IAS of using multi-level marketing scheme to sell plastic lenses and commit tax fraud.[210]

After Plaskolite expressed hesitation about doing business with IAS because of the investigation, Randale Johnson indicated Cobblestone, instead of IAS, would purchase the plastic lenses if that would be easier for Plaskolite.[211] After this conversation, Cobblestone made the two transfers on May 2, 2018.[212] Plaskolite's decision to send an invoice to Cobblestone instead of IAS is concealment under Section 202(2)(c).

Second, Section 202(2)(d) is satisfied because the Receivership Entities were sued by the Department of Justice for fraud before the transactions occurred. On February 26, 2018,

---

[208] Receiver's Motion at 9.

[209] Receiver's Motion at 6-7.

[210] Receiver's Motion at 11.

[211] Receiver's Motion at 10.

[212] Receiver's Motion at 12.

Plaskolite became aware that the Department of Justice's complaint against the Receivership Defendants accused these entities of engaging in a multi-level marketing scheme to defraud customers by selling solar lenses.[213] Plaskolite was also aware that the Receivership Entities and Cobblestone shared insiders, and the plastic lenses Plaskolite was providing Cobblestone would be used in the fraudulent scheme that was the subject of the Department of Justice's lawsuit.[214] The transfers that were made on May 2, 2018, satisfy Section 202(2)(d) because before the transfers were made or obligation was incurred, the debtor had been sued.

Third, Section 202(2)(g) is satisfied because Cobblestone transferred substantially all of the assets to Glenda Johnson on June 22, 2018, which was the date the District of Utah issued its findings on the record that the Receivership Defendants engaged in a "massive fraud."[215] These three badges establish that Cobblestone's intent for the transfers was to defraud its creditors; there is no dispute as to any material fact; and the Receiver is entitled to judgment as a matter of law for his remaining fraudulent transfer claim.

### 5. The Good Faith Defense is not available to Plaskolite

Plaskolite argues that summary judgment on the fraudulent transfer claim would be inappropriate because: (1) the evidence in the record supports the conclusion that Plaskolite conducted the transactions in good faith; (2) a good-faith determination is inappropriate for summary disposition; and (3) Cobblestone was not involved in a lawsuit with the Department of Justice.[216] "To establish the good faith defense, a defendant must show (1) he took the transfers

---

[213] Receiver's Motion at 11.

[214] Receiver's Motion at 11, ¶43.

[215] Receiver's Motion at 14.

[216] Plaskolite's Opposition at 32.

in good faith, and (2) for reasonably equivalent value given to the Receivership Entities."[217] The Receiver does not argue whether Plaskolite received reasonably equivalent value for the plastic lenses.[218] The Receiver argues that Plaskolite did not receive the transfers in good faith.

In analyzing fraudulent transfer claims, good faith "is 'measured objectively' based on whether 'the circumstances would place a reasonable person on inquiry [notice] of a debtor's fraudulent purpose, and [whether] diligent inquiry would have discovered the fraudulent purpose."[219] "A transferee who reasonably should have known of a debtor's insolvency or of the fraudulent intent underlying the transfer is not entitled to a finding of good faith."[220]

The undisputed facts in the record establish that Plaskolite cannot establish a good faith defense. Plaskolite was on inquiry notice of the Receivership Entities fraudulent intent related to the solar tax credit and plastic lense scheme. Specifically: (1) Plaskolite received a subpoena from the Department of Justice on January 13, 2017 related to the Civil Enforcement Case; (2) on February 12, 2018, Plaskolite's outside counsel informed Plaskolite that he was concerned that the Department of Justice's lawsuit against IAS could result in a clawback; (3) on February 26, 2018, Plaskolite's John Kupchick reviewed a news release that detailed the Department of Justice's lawsuit was linked to IAS's sale of solar lenses for tax credits, and Plaskolite understood the solar lenses mentioned in the news release were the lens products that Plaskolite was selling to IAS; and (4) also on February 26, 2018, Randale Johnson informed Plaskolite that Cobblestone would be the purchasing entity for the new order of plastic lenses instead of IAS.

---

[217] *Klein v. Johnson*, No. 2:19-CV-00534-DN-PK, 2023 WL 2540652, at *17 (D. Utah Mar. 16, 2023) (citing Utah Code Ann. § 25-6-304(1)).

[218] Receiver's Motion at 19-21.

[219] *Klein v. Johnson*, No. 2:19-CV-00532-DN-PK, 2023 WL 2540790 at *19 (D. Utah Mar. 16, 2023) (citing *Wing v. Layton*, 957 F. Supp. 2d 1307, 1319 (D. Utah 2013)).

[220] *Wing v. Layton*, 957 F. Supp. 2d 1307, 1319 (D. Utah 2013) (citing *Jobin v. McKay*, 84 F.3d 1330, 1338 (10th Cir. 1996)).

These undisputed facts establish that a reasonable person would be on inquiry notice. At that point even casual inquiry would have revealed the Receivership Entities' fraudulent purpose.

Plaskolite argues that the Voidable Transfer claim fails because Cobblestone was not a party to the CEC.[221] Cobblestone's non-party status to the CEC is not relevant because the CEC established essential facts that support the conclusion that the transfer between Plaskolite and Cobblestone was made with the intent to defraud under Utah Code Ann. § 25-6-202(1)(a). Cobblestone was not required to be a party to the CEC to establish the essential facts for this claim. The CEC action and the undisputed facts for this motion establish the essential facts for the Voidable Transfer claim.

### C.    The Receiver is entitled to prejudgment interest

The Tenth Circuit has "prescribed a two-step test to determine whether to award prejudgment interest.[222] The first step is to determine whether such an award would compensate the injured party."[223] The second step is to determine whether "the equities would preclude an award."[224] The parties disagree about whether prejudgment interest should be awarded.[225]

For the first step, the interest award would compensate the victims of the fraud for the time they have been wrongfully deprived of their assets. At the second step, the balance of

---

[221] Plaskolite's Opposition at 32.

[222] *Eastman Kodak Co. v. Westway Motor Freight, Inc.*, 949 F.2d 317, 321 (10th Cir. 1991) ("[The Tenth Circuit] announced that an award of prejudgment interest turns on a two-step analysis.").

[223] *White v. Chafin*, 862 F.3d 1065, 1068 (10th Cir. 2017) (citations omitted); *Zuchel v. City & Cnty. of Denver, Colo.*, 997 F.2d 730, 746 (10th Cir. 1993); *Eastman Kodak Co. v. Westway Motor Freight, Inc.*, 949 F.2d 317, 321 (10th Cir. 1991) ("[The Tenth Circuit] announced that an award of prejudgment interest turns on a two-step analysis. The district court must first determine whether the award of prejudgment interest will compensate the injured party.").

[224] *Eastman Kodak Co.*, 949 F.2d at 321) ("Second, even if the award of prejudgment interest is compensatory in nature, the district court must still determine whether the equities would preclude the award of prejudgment interest.").

[225] Receiver's Motion at 22; Plaskolite's Opposition at 34.

equities do not preclude prejudgment interest and actually recommend it. While Plaskolite did

not make materially false statements related to the fraud, Plaskolite was aware that that the

Department of Justice was accusing and suing Plaskolite for using plastic lenses in furtherance of

a tax fraud. Additionally, Plaskolite knew it was providing the Receivership Entities the primary

component of their fraud (i.e., plastic lenses). Finally, Plaskolite has had possession and benefit

of the funds received for many years. The Receiver is entitled to prejudgment interest, and the

proposed rate of 5% per annum is reasonable.[226]

## VII.   ORDER

IT IS HEREBY ORDERED that the Receiver's Motion for Summary Judgment for the

Receiver's Fraudulent Transfer and Prejudgment Interest is GRANTED. The Receiver will

propose the form of a judgment to Plaskolite within ten days, and thereafter present it to the court

in editable form.


Signed September 20, 2024.


BY THE COURT


David Nuffer
United States District Judge

---

[226] *Wing v. Gillis,* 525 F. App'x 795, 802 (10th Cir. 2013) (concluding the District Court did not abuse its discretion by awarding 5% in prejudgment interest); *see also Hafen v. Howell,* No. 2:19-CV-00813-TC, 2023 WL 5000944, at *6 (D. Utah Aug. 4, 2023) ("[The Defendants] argue that there is no legal basis for an award of five percent per annum interest. But the Tenth Circuit has upheld the use of a five percent prejudgment interest rate when a district awarded it in a Receivership case.").